989 F.2d 156
 36 ERC 1457, 61 USLW 2600, 23 Envtl.
L. Rep. 20,876
 Mario J. PALUMBO, Attorney General of West Virginia, as
parens patriae of certain Citizens of West
Virginia; City of Chester, WV,
Plaintiffs-Appellees,
v.
WASTE TECHNOLOGIES INDUSTRIES, an Ohio partnership; Von
Roll (Ohio), Incorporated, a Delaware Corporation; Energy
Technology, Incorporated, an Ohio Corporation; Waste
Technologies, Incorporated, an Arkansas Corporation;
Environmental Elements Ohio, Incorporated, a Delaware
Corporation, Defendants-Appellants.
 No. 92-2415.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 1, 1993.
Decided March 23, 1993.
 
 Randolph Carson Wiseman, Trial Counsel, Bricker & Eckler, Columbus, OH, argued (Charles H. Waterman, III, Bernadette J. Bollas, Bricker & Eckler, Columbus, OH, Lester C. Hess, Jr., Jeffrey A. Holmstrand, Bachmann, Hess, Bachmann & Garden, Wheeling, WV, on brief), for defendants-appellants.
 Richard Lee Gottlieb, Sp. Asst. Atty. Gen., Lewis, Friedberg, Glasser, Casey & Rollins, Charleston, WV, argued (Darrell V. McGraw, Jr., Atty. Gen., Stephen R. Van Camp, Asst. Atty. Gen., Charleston, WV, on brief), for plaintiffs-appellees.
 Before ERVIN, Chief Judge, and WIDENER and WILKINSON, Circuit Judges.
 OPINION
 WILKINSON, Circuit Judge:
 
 
 1
 After years of gathering state and federal permits for their hazardous waste incinerator, defendants here face a collateral challenge to the validity of those permits by certain citizens of West Virginia. The issue on this certified interlocutory appeal is whether the district court has subject matter jurisdiction over such a challenge, under the citizens' suit provision of the Resource Conservation and Recovery Act, 42 U.S.C. § 6972. We hold that it does not. Accordingly, we reverse the judgment of the district court, and remand with instructions to dismiss the complaint.
 
 I.
 
 2
 The Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901 et seq., is a comprehensive regulatory system designed to promote the safe handling of solid and hazardous wastes. Toward this end, RCRA provides for the formal identification of certain solid wastes as hazardous; a system of written manifests for tracking shipments of hazardous wastes; and a permitting scheme to insure that handlers meet certain standards in treating, storing, and disposing of hazardous wastes. States may enact their own regulatory schemes to take care of hazardous wastes, as long as they comply with the minimum requirements of federal law.
 
 
 3
 Defendant Waste Technologies Industries ("WTI") is the Ohio partnership that owns the hazardous waste incinerator located in East Liverpool, Ohio, on the banks of the Ohio River. The remaining corporate defendants are the partners in WTI. The plaintiffs in this case are the Attorney General for West Virginia, acting as parens patriae for the citizens of West Virginia who oppose the operation of the incinerator; and the City of Chester, West Virginia, which sits directly across the Ohio River from the incinerator.
 
 
 4
 For more than ten years, defendants have been working to obtain and maintain the state and federal permits necessary to begin operating the East Liverpool incinerator. Defendants received their first permit on February 2, 1983, when the Ohio Environmental Protection Agency issued them an air pollution permit to install the incinerator at the East Liverpool site. Because the Ohio EPA had authority at that time to administer the federal Clean Air Act as well, the issuance of this permit brought the proposed incinerator into compliance with both the Ohio air pollution laws, Ohio Rev.Code chapter 3704, and the federal Clean Air Act, 42 U.S.C. §§ 7401 et seq.
 
 
 5
 On June 24 of the same year, the federal EPA issued the defendants a hazardous waste permit for the incinerator, as required by RCRA. Because the Ohio EPA did not have an EPA-authorized hazardous waste program at that time, the defendants had to obtain a separate state hazardous waste permit under Ohio Rev.Code chapter 3734. The Ohio EPA granted the state hazardous waste permit on April 27, 1984. The State of West Virginia challenged the issuance of the state permit in the Ohio appellate courts, but the Ohio Supreme Court ultimately affirmed the decision of the Ohio EPA. West Virginia v. Ohio Hazardous Waste Facility Approval Bd., 28 Ohio St.3d 83, 502 N.E.2d 625 (1986).
 
 
 6
 In July 1990, and again in April 1991, the defendants applied separately to the Ohio EPA and the federal EPA for a number of changes to their hazardous waste permits, including the addition of a spray dryer. On December 18, 1991, the Ohio EPA approved these changes and issued the defendants a revised hazardous waste permit. An appeal of that decision, brought by the Attorney General for West Virginia and others, is pending before the Ohio Environmental Board of Review.
 
 
 7
 On February 3, 1992, the federal EPA likewise approved the modifications requested by the defendants. The Attorney General for West Virginia and others then sought review of that modification decision before the United States Environmental Appeals Board. On July 24, 1992, the Environmental Appeals Board rejected the petitioners' challenge. Under 42 U.S.C. § 6976(b), petitioners had ninety days to appeal the Board's ruling to an appropriate circuit court. They did not.
 
 
 8
 Instead, plaintiffs have pursued this action. On April 21, 1992, plaintiffs filed a nine-count complaint in the Northern District of West Virginia, challenging the validity of the defendants' state and federal hazardous waste permits, and seeking to enjoin the eventual operation of the East Liverpool incinerator. On May 22, WTI moved to dismiss the complaint on several grounds, including lack of subject matter jurisdiction. The plaintiffs then moved to amend their complaint to allege that the incinerator would pose an "imminent and substantial endangerment to health or the environment" under the RCRA citizens' suit provision, 42 U.S.C. § 6972(a)(1)(B).
 
 
 9
 On October 9, the district court granted the plaintiffs' motions to amend, as well as the defendants' motion to dismiss Count VIII of the complaint for failure to state a claim upon which relief could be granted. The court denied, however, defendants' motion to dismiss Counts I-VII and IX, ruling that it did have subject matter jurisdiction over these counts under the "imminent and substantial endangerment" clause of § 6972(a)(1)(B). The district court then certified WTI's motion to file an interlocutory appeal on the issue of subject matter jurisdiction, which we granted. See 28 U.S.C. § 1292(b).
 
 II.
 
 10
 The RCRA citizens' suit statute provides in relevant part as follows:
 
 
 11
 [A]ny person may commence a civil action on his own behalf--
 
 
 12
 (1)(A) against any person ... who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter; or
 
 
 13
 (B) against any person ... who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment....
 
 
 14
 42 U.S.C. § 6972(a) (emphasis added). Plaintiffs argue that the district court was correct to accept for jurisdictional purposes their allegations that the operation of the incinerator would pose an "imminent and substantial endangerment" under § 6972(a)(1)(B), and maintain that we are obliged to do the same. Defendants maintain that the facts, even as plaintiffs state them, do not give rise to the kind of "imminent and substantial endangerment" that § 6972(a)(1)(B) requires.
 
 
 15
 We agree with defendants that § 6972(a)(1)(B) does not cover this case. At bottom, plaintiffs' complaint is nothing more than a collateral attack on the prior permitting decisions of the federal EPA. The RCRA judicial review provision plainly forbids such an attack, in place of a direct appeal:
 
 
 16
 Review of the Administrator's action ... in issuing, denying, modifying, or revoking any permit under section 6925 of this title ... may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides.... Any such application shall be made within ninety days from the date of such issuance, denial, modification, revocation, ... or after such date only if such application is based solely on grounds which arose after such ninetieth day. Action of the Administrator with respect to which review could have been obtained under this subsection shall not be subject to judicial review in civil or criminal proceedings for enforcement.
 
 
 17
 42 U.S.C. § 6976(b) (emphasis added). Plaintiffs chose not to appeal the February 1992 modification decision to an appropriate circuit court; they are bound by that choice now.
 
 
 18
 To the extent that plaintiffs challenge separately the permitting decisions of the Ohio EPA, they are denied jurisdiction on Burford abstention grounds. Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (abstaining from review of complex state regulatory scheme, where state has established specialized tribunal to review that scheme); see also Ada-Cascade Watch Co. v. Cascade Resource Recovery, Inc., 720 F.2d 897 (6th Cir.1983) (abstaining under Burford from review of Michigan's Hazardous Waste Management Act and Solid Waste Management Act). Ohio has taken great care to provide for specialized adjudication of its complicated environmental law scheme. Initial applications for hazardous waste permits are screened by the Ohio EPA and then reviewed by the Ohio Hazardous Waste Facility Approval Board. Ohio Rev.Code § 3734.05(D)(2)-(3). The members of this Board are the director of the Ohio EPA, the Ohio director of natural resources, the chairman of the Ohio water development authority, a university-employed chemical engineer, and a university-employed geologist. Id. at § 3734.05(D)(1). Decisions of the Board may be appealed to the Franklin County Court of Appeals, and then to the Ohio Supreme Court. Id. at § 3734.05(D)(7). Subsequent permit revisions that the Ohio EPA approves may be appealed to the Ohio Environmental Board of Review, whose three members are each required to have "extensive experience in pollution control and abatement technology, ecology, public health, environmental law, economics of natural resource development, or related fields." Id. at § 3745.02. Decisions of the Environmental Board of Review may also be appealed to an intermediate court of appeals, and ultimately to the Ohio Supreme Court. Id. at § 3745.06. Plaintiffs are currently using this latter channel of review: an appeal of the Ohio EPA's December 1991 decision is pending before the Environmental Board of Review. Burford forbids us to interfere.
 
 III.
 
 19
 A count-by-count examination of the substance of plaintiffs' complaint confirms that it is at root a collateral attack on the permitting decisions of the federal and Ohio EPAs. Count I alleges that WTI failed to notify either EPA that the members of the partnership had changed since the issuance of their hazardous waste permits, in violation of 42 U.S.C. § 6925 and 40 C.F.R. § 270.30(a). Count II builds on Count I, alleging that because the partners of WTI have changed, WTI has effectively transferred its permits to a new entity without modification or revocation-reissuance, in violation of 42 U.S.C. § 6925(c) and 40 C.F.R. §§ 270.40(a) and 270.30(1)(3). Count III parallels Count II, alleging that the permit modification allowing WTI to install spray dryers listed a new partner as the operator of the incinerator, again in violation of 42 U.S.C. § 6925 and 40 C.F.R. §§ 270.40 and 270.30. Count IV alleges that the owner of the land on which the incinerator is located did not sign WTI's hazardous waste permit applications, in violation of 40 C.F.R. §§ 270.10(b) and 270.40(a). All of these counts allege what are essentially technical violations in the EPA permitting process. On their face, they do not give rise to any "imminent and substantial endangerment to health or the environment," and the plaintiffs should have raised them on direct appeal, or with the relevant regulatory bodies.
 
 
 20
 Count V alleges that on January 30, 1991, the Ohio EPA notified the defendants that the incinerator was not in compliance with certain conditions of its state hazardous waste permit. Plaintiffs claim that the federal and Ohio EPAs should then have revoked the defendants' permit; plaintiffs do not allege, however, that the incinerator is currently in noncompliance. In essence, then, plaintiffs challenge the EPAs' decisions to give the defendants time to bring their incinerator into compliance with the terms of their permits. Once again, plaintiffs should have raised this issue on direct appeal, either from the federal EPA's permit modification decision in February 1992, or from the Ohio EPA's parallel decision in December 1991.
 
 
 21
 Count VI alleges that the federal and Ohio EPAs have failed to review whether the location of the incinerator is still suitable in light of new environmental standards. These standards are (1) the requirement that no hazardous waste facility be located within 2000 feet of a residence or school, imposed under Ohio Rev.Code § 3734.05(D)(6) in 1984; (2) the requirement that a hazardous waste facility be designed to avoid washout from a one-hundred year flood, also imposed under Ohio Rev.Code § 3734.05(D)(6) in 1984; (3) the Reference Air Concentration ("RAC") for lead, which the federal EPA promulgated under RCRA in 56 Fed.Reg. 7134 (Feb. 22, 1991); and (4) the "Guideline on Air Quality Models" prescribing a new model for determining whether a plant is in compliance with the secondary ambient air quality standard ("AAQS") for sulfur dioxide, which model the federal EPA revised in July 1986. Count VII overlaps with Count VI, and alleges that the federal and Ohio EPAs have failed to require the defendants, as conditions of their hazardous waste permits, to comply with the RAC for lead and secondary AAQS for sulfur dioxide. Even if § 6972(a)(1)(B) is read to extend to non-RCRA violations as well, we emphasize again that plaintiffs' claims are simply expressions of displeasure with the alleged inadequacies of EPA review. Plaintiffs should have taken up these challenges with the appropriate agencies, or raised them on direct appeal from EPA permitting decisions, whether in state or federal court. "Generally, when jurisdiction to review administrative determinations is vested in the courts of appeals these specific, exclusive jurisdiction provisions preempt district court jurisdiction over related issues under other statutes." Connors v. Amax Coal Co., 858 F.2d 1226, 1231 (7th Cir.1988); accord Media Access Project v. FCC, 883 F.2d 1063, 1067-69 (D.C.Cir.1989).
 
 
 22
 Finally, Count IX alleges that the operation of the incinerator will pose a public nuisance, under either federal or state common law. This count functions as little more than an "omnibus" count, reiterating under the guise of a common law claim plaintiffs' now-familiar dissatisfaction with the EPA permitting decisions. The count expressly incorporates the allegations of the preceding counts, alleges once again that the EPA permitting process was deficient, and then enumerates the ensuing risks in an attempt to give substance to the claim of nuisance. These risks are (1) the possibility of washout from a one-hundred year flood; (2) the production of mustard gas by the new spray dryer; and (3) the discharge of lead and other contaminants from the incinerator. All of these risks arise from the violations alleged in the first seven counts; all relate to EPA permitting decisions that plaintiffs should have challenged on direct appeal. Plaintiffs cannot evade the exclusive jurisdiction rule of § 6976 simply by slapping a nuisance label on the violations alleged in the first seven counts. Since the first seven counts fail to allege sufficient jurisdictional facts, the nuisance count fails as well.*
 
 IV.
 
 23
 We conclude by re-emphasizing that when Congress has chosen to provide the circuit courts with exclusive jurisdiction over appeals from agency decisions, the district courts are without jurisdiction over the legal issues pertaining to those decisions--whether or not those issues arise from the statute that authorized the agency action in the first place. Media Access, 883 F.2d at 1067; Connors, 858 F.2d at 1231. See also General Electric Uranium Management Corp. v. Department of Energy, 764 F.2d 896, 903 (D.C.Cir.1985) ("where it is unclear whether review jurisdiction is in the district court or the court of appeals the ambiguity is resolved in favor of the latter") (quoting Denberg v. United States R.R. Retirement Bd., 696 F.2d 1193, 1197 (7th Cir.1983)). Plaintiffs cannot launch a grapeshot collateral attack on the permitting decisions of the EPA--invoking RCRA, the Clean Air Act, Ohio hazardous waste laws, and the common law of nuisance--and hope that one of these shots will land them in a federal district court. "The choice of forum is ... for Congress and we cannot imagine that Congress intended the exclusivity vel non of statutory review to depend on the substantive infirmity alleged. The policy behind having a special review procedure in the first place similarly disfavors bifurcating jurisdiction over various substantive grounds between district court and the court of appeals." City of Rochester v. Bond, 603 F.2d 927, 936 (D.C.Cir.1979).
 
 
 24
 Adding another layer of collateral review for agency decisions threatens to put at naught the administrative process established by Congress. Plaintiffs who sue collaterally in a federal district court would be able to avoid the deferential standard of review that circuit courts must apply under the Administrative Procedure Act when hearing a direct appeal from an agency decision. 5 U.S.C. § 706. Plaintiffs would also be able to circumvent the limitations period during which they were required to post a direct appeal--ninety days in the case of RCRA. And the district court, as plenary fact-finder, would not be limited to the evidentiary record that the agency has accumulated during the months of permit proceedings and public hearings held prior to the issuance of the permit. In short, for an uncertain length of time after the agency issues the permit, the permit-holder would face the very real threat that the inquiry into the validity of its permit might be reopened in an altogether different forum. This threat will have one long-term effect: otherwise worthy permit applicants will weigh the formidable costs in delay and litigation, and simply will not apply. See General Electric, 764 F.2d at 903 ("exclusive jurisdiction in the court of appeals avoids duplicative review and the attendant delay and expense involved"). We see no evidence that Congress intended to eviscerate the very permitting process that Congress itself set up, and we will not do so by entertaining this suit.
 
 
 25
 For the foregoing reasons, the district court is without jurisdiction over this complaint. We remand this case with directions that it be dismissed.
 
 
 26
 REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.
 
 
 
 *
 In the alternative, plaintiffs argue that the district court has jurisdiction under § 6972(a)(1)(A), which permits suits "against any person ... who is alleged to be in violation of any permit [or] standard ... which has become effective pursuant to this chapter." As we have already demonstrated, however, the only RCRA violations that plaintiffs allege here pertain to the EPA permitting process itself; plaintiffs should have raised these issues on direct appeal. No matter how it is cast, plaintiffs' complaint remains an impermissible collateral attack on the permitting decisions of the federal and Ohio EPAs. Just like § 6972(a)(1)(B), § 6972(a)(1)(A) cannot extend this far