**TOWN OF WALLKILL, Plaintiff,**

v.

**TESA TAPE INC.; Revere Smelting and Refining Corporation; Occidental Chemical Corporation; Hercules, Inc.; Citizens Telecommunications Company of New York, Inc.; Contel of New York Inc.; Horton Memorial Hospital; Agway Petroleum Corporation and Star Expansion Company, Inc., Defendants.**

No. 94 Civ. 7133 (CLB).

United States District Court,
S.D. New York.

July 10, 1995.

Kimberlea Shaw Rea, Bleakley Platt & Schmidt, White Plains, NY, for Town of Walkill.

Dennis C. Vacco, Atty. Gen. of State of N.Y., by David A. Munro, N.Y. State Dept. of Law, Albany, NY, Eugene Martin Leff, N.Y.S. Dept. of Law, New York City, for State of N.Y.

Philip H. Gitlen, Whiteman Osterman & Hanna, Albany, NY, for Tesa Tape Inc., Revere Smelting and Refining Corp. of New Jersey, Occidental Chemical Corp.

Lanny S. Kurzweil, McCarter & English, New York City, for Hercules Inc.

Seth A. Davis, Michael Guararra, Huber Lawrence & Abell, New York City, for Citizens Telecommunications Co. of New York Inc.,

Kevin Preston, MacVean, Lewis, Sherwin & McDermott, P.C., Middletown, NY, for Horton Memorial Hosp.

Michael S. Elder, Goodwin, Proctor & Hoar, Albany, NY, for Agway Petroleum Corp.

John P. Stockli, Jr., Kristin Carter Rowe, Young Stockli & Rowe, Albany, NY, for Star Expansion Co., Inc.

Michael Guararra, Huber, Lawrence & Abell, New York City, for Contel of New York.

Kevin L. Kimball, Saperston & Day, P.C., Buffalo, NY, for Ford Motor Co.

*Memorandum & Order*

BRIEANT, District Judge.

In this action brought under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 ("CERCLA"), defendants Tesa Tape Inc., Revere Smelting & Refining Corporation and Occidental Chemical Corporation make a motion for partial summary judgment, pursuant to Rule 56 of the Fed.R.Civ.P. and Local Rule 3, filed on December 12, 1994. Separate motions for partial summary judgment

have also been filed by defendants Citizens Telecommunications Company of New York and Contel of New York, defendant Hercules, Inc., and defendant Horton Memorial Hospital,[1] filed on February 10, February 21, and February 28, respectively. Oral argument was held on March 31, 1995, and the motions were fully submitted.

Defendants' motions for partial summary judgment seek: (1) a declaration that the Town of Wallkill may seek only contribution from the defendants pursuant to Section 113 of CERCLA and may not seek to impose joint and several liability pursuant to Section 107 of CERCLA because the Town itself is a liable party; and (2) a declaration that the Town of Wallkill has failed to state a claim under CERCLA for costs expended in complying with the New York Code Rules and Regulations ("NYCRR") Part 360 Landfill Closure Requirements.

According to plaintiff Town of Wallkill, "literally millions of dollars of public funds (both State and Municipal) ride on the eventual outcome of this [summary judgment] motion." (Letter to the Court from Kimberlea Shaw Rea dated January 17, 1995.) Likewise, the State asserts that the defendants' motion for summary judgment, if granted, would have "an enormous adverse fiscal impact on both the Town and the State of New York." (Letter to the Court from David A. Munro, Assistant Attorney General, dated January 17, 1995; *see also* Memorandum of Law of Applicant for Intervention.)

▉ In turn, the defendants state that they are seeking declaratory relief at this early stage of the litigation because a ruling in their favor would reduce an alleged $7 million case to "the minimal level of damages that are shown by the Town to be causally related to each defendant", making settlement potential "highly likely"; at the very least, the extent of discovery and the breadth of the case would be "considerably narrowed." (Defendants' Memorandum of Law at 2.) Plaintiffs, however, dispute this characterization, stating that defendants misunderstand the calculation for damages under § 113. (Plaintiff's Memorandum of Law, pp. 11–12.) In any event, the potential impact on settlement is not a proper consideration for this Court in making its ruling on what is exclusively a matter of law.

## BACKGROUND

This is a CERCLA case which seeks to recover past and ongoing cleanup costs the Town of Wallkill (the "Town") has incurred and will incur in remediating contamination in its municipal landfill, an inactive hazardous waste site, which contamination was caused by the disposal of hazardous substances by the industrial generator defendants and others. This cleanup is partially state-aided and the Town must pay back, to the State of New York 75% of any recovery by it in this suit. The action was commenced when the Town filed its Complaint on September 30, 1994 (an Amended Complaint was filed on November 22, 1994). Familiarity on the part of the reader with the underlying facts and all prior proceedings in this case is assumed.

On February 24, 1995, this Court granted the motion of the State of New York (the "State") to intervene as a plaintiff in this action, seeking to recover costs incurred by the State with regard to remediation of the Wallkill landfill.[2] The State has reimbursed

---

1. By Letter to the Court dated March 27, 1995, defendant Horton Memorial Hospital joins in the motion of defendants Tesa Tape Inc., Revere Smelting & Refining Corporation and Occidental Chemical Corporation, and incorporates by reference all arguments set forth in the motion papers of these defendants.

   Likewise, in their separately filed motions, defendants Citizens Telecommunications Company of New York and Contel of New York and defendant Hercules, Inc. seek the same relief as and rely upon the submissions of defendants Tesa Tape Inc., Revere Smelting & Refining Corporation and Occidental Chemical Corporation in

connection with their motions. (Davis Aff. ¶ 4; Kurzweil Aff. ¶ 4.)

2. Although the basis of the Town's First Amended Complaint overlaps to a great degree with the claims in the Intervenor Complaint of the State, the State has separate interests which, it successfully argued therein, could be protected only by intervening in this action. Here, for example, the standard for the recovery of costs by municipalities differs from the standard applicable to states, under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). Moreover, the State has a separate claim for the cost of supervision of the implementation of the remedial plan and other

the Town in excess of $1 million, pursuant to its State Assistance Contract in the course of implementing the remedial program, and will continue to reimburse the Town for future eligible costs (Intervenor Complaint ¶¶ 35, 36).

The Town of Wallkill operated its municipal landfill from 1965 until it was closed in 1974.[3] During its operation, it accepted both municipal and industrial waste. Two years after the landfill was closed, in 1976, an inspector for the New York Department of Environmental Conservation ("NYDEC") discovered the presence of industrial drum waste allegedly marked with shipping labels of at least some of these defendants. As a result of the Town's drum removal and subsequent sampling that confirmed the presence of industrial wastes containing hazardous substances, the site was deemed a significant threat to public health or the environment. NYDEC listed the site on the State Inactive Hazardous Waste Disposal Site Registry and ordered that the site be remediated in accordance with 6 NYCRR Part 375, the regulations governing Inactive Hazardous Waste Disposal Sites in New York.[4]

The Town and State executed a consent order in July 1989, and the Town was declared eligible for 75 percent reimbursement of part of its clean up costs from the State, pursuant to the Environmental Quality Bond Act.

NYDEC ordered the Town to conduct a remedial investigation (the Remedial Investigation Feasibility Study or "RI/FS"), which the Town completed after extensive on-site sampling, public participation and debate, and following an investigation by the New York State Assembly Committee on Environmental Conservation of industrial hazardous waste disposal practices in the Mid–Hudson Valley. In June 1992, the State issued its Record of Decision ("ROD"), outlining its selected remedy for remediation of the landfill. (*See* Plaintiff's Memorandum of Law at pp. 5–7; Rea Aff. ¶¶ 16–19.) The Town, under the State's supervision, is now implementing the remedy prescribed by the federal and state regulations. (Cozzy Aff. ¶ 20.)

As of the date the Town commenced this lawsuit in September 1994, it had expended $1.5 million in response costs. The total remedial costs, including 30–year monitoring, are projected at approximately $7 million. (*See* Plaintiff's Memorandum of Law at 7.)

## THE CLAIMS

For a short period of time before the landfill closed, the Town kept records of haulers and industrial generators who purchased dump permits. Plaintiff Town alleges that the defendants named in this lawsuit were among those industrial generators, along with others not yet identified to the Court. It should be noted, however, that it is not claimed by plaintiff that what these defendants (or the Town for that matter) did was unlawful at the time they did it. (*See* Transcript of hearing on December 2, 1994 at p. 9.) It is only alleged that the defendants "generated, transported and disposed and/or arranged for disposal of wastes containing hazardous substances at the Site." Amended Complaint ¶ 17 (attached to Affidavit of Philip H. Gitlen as Exhibit A).

However, the liability imposed under § 107 is *strict liability* on *potentially responsible parties* ("PRPs") for the costs associated with the hazardous waste, imposing joint and several liability on PRPs regardless of fault (see discussion, below). In addition, Section 113 authorizes an action for contribution whereby a PRP held jointly and severally liable under CERCLA may seek contribution from other PRPs.

## I. JOINT AND SEVERAL LIABILITY UNDER § 107

■ Defendants seek to preclude the Town from maintaining claims simultaneous-

---

internal costs, a claim which the Town does not share and could not represent adequately.

**3.** The reasons for the cessation of operation of the landfill are not presently before the Court. *See* Transcript dated March 31, 1995, p. 3.

**4.** *See* Plaintiff's Exhibit 3. According to plaintiff, the State of New York has never issued an administrative enforcement order requiring the Town to perform a Part 360 closure, because 6 NYCRR Part 360 governs solid waste management facilities that do not contain hazardous waste. (Plaintiff's Memorandum of Law at p. 5, n. 4; Rea Aff. ¶ 15.)

ly under § 107 and § 113 of CERCLA. According to defendants, as the admitted "owner" and "operator" of the landfill, the Town is itself one of the parties jointly and severally liable under § 107 for remediation of the landfill; as such, defendants reason, whatever claim the Town has against others to share its liability is an action for contribution under § 113, not for joint and several liability under § 107. Defendants rely primarily upon a First Circuit case, *United Technologies Corp. v. Browning–Ferris Indus., Inc.*, 33 F.3d 96 (1st Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1176, 130 L.Ed.2d 1128 (1995), for the proposition that the only appropriate action for a "non-innocent" party is to seek contribution to recover costs expended in excess of its pro rata share, and may not seek to impose joint and several liability. However, defendants' reliance on *United Technologies* is misplaced. In that case, unlike here, the plaintiffs had admitted liability and were, for that reason, limited to a contribution action. Moreover, neither a town nor other governmental entity was involved. The court therein specifically held that "we must limit § 107 claims to those brought by *governmental entities* or innocent parties and require PRPs to settle their claims between themselves pursuant to § 113(f)." *Id.* at 100 (emphasis added).

The remainder of the cases cited by defendants in support of this argument are notably not from the Second Circuit, as our Court of Appeals has not ruled on this issue. Moreover, they are cases which are inapposite, because the plaintiffs bringing those actions were not governmental entities, as is the municipality here (see discussion below), but were private owners and operators, suing parties who had previously settled with the government. *See* 42 U.S.C. § 9613(f)(2) (CERCLA's "Contribution Protection" provision).

■ In contrast, the courts have permitted governmental PRPs to maintain suit under Section 107. *See, e.g., United States v. Kramer*, 757 F.Supp. 397 (D.N.J.1991); *United States v. Western Processing Company, Inc.*, 734 F.Supp. 930 (W.D.Wash.1990). The courts will treat a municipality as a governmental entity when to do so would further a CERCLA policy goal, particularly when that goal is encouraging settlement. *See City of New York v. Exxon Corp.*, 697 F.Supp. 677, 685 (S.D.N.Y.1988) (the court treated municipal plaintiff as a "state" for purposes of Section 113(f), because this would allow contribution protection to settling PRPs and "advance the Act's remedial purposes by encouraging early and complete settlements"). In addition, the intervention by the State of New York in this action clearly supports the Town's role as a governmental plaintiff.

Contrary to the frequent references thereto by the defendants, the Town has *not* admitted liability under CERCLA through its consent order with the State. Neither the Town's fulfillment of its cleanup obligations under CERCLA, nor the degree to which such efforts are "voluntary" rather than imposed upon the Town by statute, are controlling in this action. The plain language of CERCLA directs that consent decrees for cleanups "... shall not be considered an admission of liability for any purpose ..." 42 U.S.C. § 9622(d)(1)(B). This Court finds that the Town's liability under CERCLA is not determinative of its right to recovery against the defendants. *See* Plaintiff's Memorandum of Law at 19.

The United States Supreme Court touched upon this issue in *Key Tronic Corp. v. United States*, —— U.S. ——, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994), which allowed a plaintiff PRP to maintain both a Section 107(a) cost recovery action to recover its own response costs, as well as a Section 113 contribution claim. The Court held:

> "[CERCLA] now expressly authorizes a cause of action for contribution in Section 113 and impliedly authorizes a similar and somewhat *overlapping remedy in Section 107.*"

*Id.* at 1966, 114 S.Ct. at 1966 (emphasis added). Several other courts cited by plaintiff had previously upheld the right of plaintiff PRPs (both private and governmental) to maintain both remedies in the same cost recovery action. *See* Plaintiff's Memorandum of Law at pp. 13–14; Sur–Reply at p. 6.

Although our Court of Appeals has not addressed this issue, this Court agrees with

the only court in this Circuit to rule upon it, in *Companies For Fair Allocation v. Axil Corp.*, 853 F.Supp. 575, 580–581 (D.Conn. 1994). The district court therein analyzed the logic of CERCLA's broad remedial purposes and allowed a plaintiff PRP to maintain concurrent Section 107 and 113 actions against other PRPs. The *Axil* plaintiffs, much like the instant case, were owners and operators of a landfill containing hazardous substances who had been ordered by the Connecticut Department of Environmental Protection to investigate and clean up the landfill. They entered into an administrative order on consent that obligated them to perform an RI/FS to determine the nature and extent of the contamination, and remediation. Like the Town of Wallkill, those plaintiffs subsequently filed suit against the industrial generator defendants, and were allowed to proceed under both sections of CERCLA. Thus, even if the Town were not a governmental plaintiff, it would be entitled to maintain both § 107 and § 113 claims; this Court so concludes.

## II. THE NEW YORK STATE CLOSURE REQUIREMENTS

■ This Court rejects defendants' argument that failure by the Town to cap the landfill when it was closed in 1974 somehow affects or breaks the chain of causation of damages. Defendants contend that the *costs* must have been caused by a release or threatened release of hazardous substances in order to be recoverable under § 107(a)(4). They further argue that:

> "the Town's obligation to properly close its landfill is wholly unrelated to the release or threatened release of hazardous substances: if there wasn't a single hazardous substance at the Site, the Town would still be required to comply with Part 360 and to properly close its landfill."

Defendants' Reply Memorandum at 7–8. This Court concludes that noncompliance with state regulations does not preclude CERCLA liability. *See City of Fresno v. NL Industries, Inc.*, No. CV–F 93–5091 (E.D.Cal., Jan. 19, 1995).

Rather, the scope of liability and damages will be determined in this case under CERC-LA by its terms, which in § 107(a) defines who is responsible for the costs of cleaning up contaminated sites, and what releases trigger liability. Section 107 sets forth the "responsible parties" ("PRPs") to include:

> "Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—
>
> .    .    .    .    .
>
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances,
>
> ... from which there is a release, or a threatened release which causes the incurrence of response cost, of a hazardous substance, shall be liable ..."

42 U.S.C. § 9607(a). It is not contested that the defendants herein fall within the category of PRPs under this statute for which liability attaches if all of the elements are established.

■ Under Section 107(a), liability attaches if a release or threatened release "causes" incurrence of *some* response costs; it does not require that such a release cause *all* of the response costs which the Town seeks to recover. (*See Amoco Oil Co. v. Borden Inc.*, 889 F.2d 664, 671 (5th Cir. 1989)). Once the liability threshold has been met, plaintiff need not demonstrate a direct causal link between the costs and the release or threatened release; rather, the plaintiff's costs must be "necessary costs of response consistent with the national contingency plan" ("NCP"). *See* 42 U.S.C. § 9607(a)(4)(A)–(B). As declared by our Court of Appeals, "it seems plain that in addition to imposing a strict liability scheme, CERCLA does away with a causation requirement." *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 721 (2d Cir.1993). *See also B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1198 (2d Cir.1992) (liability under CERCLA "is precluded only by defense that

the release or threatened release was caused solely by an act of God, an act of war, or certain acts or omissions of third parties other than those with whom a defendant has a contractual relationship"). To be consistent with the NCP, the Town's response action had to comply with the state standards, which it did (6 N.Y.C.R.R. Part 375). *See General Elec. Co. v. Litton Indust. Automation Systems,* 920 F.2d 1415, 1421 (8th Cir.1990), *cert. denied,* 499 U.S. 937, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991). This Court must, ultimately, if liability is established under this federal statute, fashion a remedy which will be consistent with the policy of CERCLA to make generators pay their share of the cleanup costs, regardless of whether their actions were lawful at the time their hazardous materials were disposed of at the landfill.

▮ The alleged failure to close the landfill properly is claimed by defendants to limit their contribution to the cost of the cleanup efforts, or to eliminate their liability altogether. The issue of the Town's compliance, or noncompliance, with the closure requirements of New York State seems relevant, at most, to the apportionment of the damages, or a limitation on the amount of damages recoverable. This involves factual questions which cannot be decided on the record presently before this Court; as such, this issue does not lend itself to partial summary judgment.

We cannot assume that the failure to cap the landfill in 1974, as may have been required by 6 NYCRR Part 360, the solid waste management regulations in effect in October 1974 for closure of landfills which do not contain hazardous waste, increased the current cost of hazardous waste remedial action by the Town pursuant to 6 NYCRR Part 375, as suggested by the defendants. It may well be that, had the landfill been properly capped when it was closed, and the hazardous waste discovered at some point in time thereafter, the cost of removing the cap

before undertaking hazardous waste remediation might actually be greater. *See* Transcript dated March 31, 1995 at pp. 34–35, 39–40 (statement of David A. Munroe, Assistant Attorney General). However, we leave this issue for another, more appropriate, time because its resolution would require factual evidence which will be available only at trial.

Even the remedial measures required to be employed by the Town to effect removal of the hazardous waste under CERCLA and Part 375, and the degree to which the closure requirements of Part 360 would be coextensive, are contested issues whose resolution hinges upon highly technical, disputed facts. *See* Declaration of Robert J. Cozzy, Environmental Engineer, ¶¶ 10, 14, 17–18 (discussing remedial requirements for the Wallkill landfill); *but see* Gitlen Aff. dated December 12, 1994 ¶¶ 5–7.

The parties also place at issue whether the Town did in fact comply with the applicable state regulations, and specifically, whether these regulations were self-executing.[5] A further question in this regard will be to determine precisely what the obligations of the Town were before CERCLA was enacted, and the effect, if any, of its alleged failure to comply with those obligations upon the damages in this case. *See, e.g.,* Plaintiff Town's Sur–Reply at p. 2; Transcript dated March 31, 1995 at pp. 4–5, 19–20, 25–26, 32–34, 37. However, in light of our ruling, above, we need not at this time address these additional, related fact-intensive issues.

Our Court of Appeals has interpreted the language of CERCLA and the Superfund Amendments and Reauthorization Act of 1986 ("SARA") and their respective legislative histories to demonstrate that liability may be fixed first and immediately for enforcement purposes, and litigation later to determine what contribution is owed and by whom as a result of the remediation effort. *United States v. Alcan Aluminum Corp.,* 990 F.2d at 723. Recognizing that the apportion-

---

5. The defendants allege the applicable state regulations to be 6 N.Y.C.R.R. Part 360, which they claim to have been self-executing; whereas, the Town asserts that those regulations are not self-executing, and cites to 6 N.Y.C.R.R. Part 375, with which the Town has been and is complying.

The State confirms that there was no enforcement action taken by it, and that the Town has complied with the State law, but appears unclear as to whether the regulations were by their nature self-executing.

ment of liability in a CERCLA action is an intensely factual determination, the Court emphasized that "the choice as to when to address divisibility and apportionment are questions best left to the sound discretion of the trial court in the handling of an individual case." *Id.* at 722, 723.

Accordingly, the motions for partial summary judgment are denied.

SO ORDERED.