60 F.3d 1188
 41 ERC 1748, 64 USLW 2105, 25 Envtl.
L. Rep. 21,408
 COALITION FOR HEALTH CONCERN, a Nonprofit Corporation;
Natural Resources Defense Council, Inc., a Not For Profit
Corporation; Sierra Club, a Nonprofit Corporation; and
Ernest Ramey Whitehead, Plaintiffs-Appellees,
v.
LWD, INC., a Kentucky Corporation (93-6575); and Phillip J.
Shepherd, in his official capacity as Secretary of the
Kentucky Cabinet for Natural Resources and Environmental
Protection (93-6576), Defendants-Appellants.
 Nos. 93-6575, 93-6576.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 30, 1995.
Decided July 27, 1995.
 
 1
 Todd E. Leatherman, Reeves & Graddy, Lexington, KY (briefed), Mick G. Harrison, Richard E. Condit, Government Accountability Project, Washington, DC, for Coalition for Health Concern.
 
 
 2
 Nancy Marks, Katherine Kennedy (argued), Natural Resources Defense Council, Inc., New York City, for Natural Resources Defense Council, Inc.
 
 
 3
 Todd E. Leatherman, Reeves & Graddy, Lexington, KY, for Sierra Club, Ernest Ramey Whitehead.
 
 
 4
 Virginia H. Snell (briefed), M. Stephen Pitt, Wyatt, Tarrant & Combs, Louisville, KY, Barry E. Friedman (argued), Wyatt, Tarrant, Combs, Gilbert & Milom, Nashville, TN, for LWD, Inc.
 
 
 5
 Before: KEITH and NELSON, Circuit Judges; HORTON, District Judge*.
 
 
 6
 HORTON, District Judge.
 
 
 7
 This case is before the Court on interlocutory appeal from the United States District Court for the Western District of Kentucky pursuant to 28 U.S.C. Sec. 1292(b) (1988). The controversy involves a dispute over the licensing and operation of a hazardous waste incineration facility in Calvert City, Kentucky owned by a company known as LWD, Inc. Plaintiffs-appellees failed to persuade the Kentucky agency charged with regulating hazardous waste that LWD's facility was in violation of federal and state regulations and should be closed. Subsequently, plaintiffs-appellees abandoned all Kentucky administrative proceedings before a decision had been reached and filed this action in the district court.
 
 
 8
 The issue on appeal is whether the district court, applying the Burford abstention doctrine, properly declined to dismiss plaintiffs' claims because of the ongoing state administrative proceedings. See, Burford v. Sun Oil Company, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The district court, relying on New Orleans Public Service, Inc. v. Council of New Orleans, 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (" NOPSI "), concluded it could not dismiss plaintiffs' claims under Burford unless the claims required significant analysis of state law.
 
 
 9
 Our review of the record leads us to the conclusion that Kentucky law provides an adequate review process for plaintiffs' claims and that the exercise of federal jurisdiction and review at this point would be disruptive of Kentucky's efforts to establish a coherent policy with respect to the licensing of hazardous waste facilities in that commonwealth. We also find this case distinguishable from NOPSI, supra, and that Burford abstention is appropriate here. Accordingly, we reverse and remand with instructions that the district court dismiss all of plaintiffs' claims without prejudice except Count III. We conclude the district court should dismiss Count III of plaintiff's complaint for want of jurisdiction under Palumbo v. Waste Technologies Industries, 989 F.2d 156 (4th Cir.1993).
 
 
 10
 I. The Parties and Claims.
 
 
 11
 The Defendants-appellants in this case are LWD, Inc. ("LWD"), the owner and operator of a hazardous waste incineration facility, and Phillip J. Shepherd, in his official capacity as Secretary of Kentucky's Cabinet for Natural Resources and Environmental Protection (the "Secretary" and "Cabinet"). Plaintiffs-appellees, Coalition for Health Concern, Natural Resources Defense Council, Inc., Sierra Club and Ernest Ramey Whitehead (collectively "CHC"), are environmental groups with members who live near the facility and an individual who also lives near the facility. Plaintiffs-appellees brought this action for alleged violations by the Secretary and LWD of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. Secs. 6901-6992 (1988) and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. Secs. 9601-9675 (1988).
 
 
 12
 Plaintiffs' primary claim is that LWD is in violation of RCRA because the facility is operating without a final "Part B" permit. Plaintiffs allege that under RCRA, as amended, the Part B permit must have been issued or denied by November 8, 1989. See, 42 U.S.C. Sec. 6925(c). Plaintiffs also claim the Secretary failed to perform his statutory duty to either issue or deny LWD's final "Part B" permit by the November 8, 1989 deadline. Defendants-appellants, in addition to their procedural defenses, contend that LWD is entitled to "interim status" pursuant to 42 U.S.C. Sec. 6925(e) and under state law until a final decision is made on their Part B permit application irrespective of the November 8, 1989 deadline.
 
 
 13
 The Secretary and LWD both filed motions to dismiss arguing lack of subject matter jurisdiction, the doctrine of abstention and other defenses. The district court denied the motions to dismiss but did, however, dismiss one count of the complaint pursuant to the Burford abstention doctrine. The district court retained jurisdiction over the remaining claims to the extent they did not require an indepth analysis of state law.
 
 
 14
 Recognizing an immediate appeal might materially advance the ultimate termination of this litigation, the district court certified its decision to this court as appropriate for interlocutory appeal sua sponte. We subsequently granted defendants'-appellants' petitions for review.
 
 
 15
 II. RCRA and Kentucky's Authorized Hazardous Waste Program.
 
 
 16
 RCRA is a comprehensive regulatory system designed to promote the safe handling of solid and hazardous wastes. See, Palumbo v. Waste Technologies Indus., 989 F.2d 156, 157 (4th Cir.1993). RCRA was amended by the Hazardous and Solid Waste Amendments of 1984, Pub.L. No. 98-616, 98 Stat. 3221 ("HSWA")(current version at 42 U.S.C. Secs. 6901-6992 (1988)), which imposed stricter standards on the owners and operators of hazardous waste treatment facilities to provide better protection for the public and the environment. See, e.g., 42 U.S.C. Sec. 6924. Under RCRA, the United States Environmental Protection Agency ("EPA") has primary responsibility for implementing its directives; however, the states may enact their own hazardous waste regulatory program. 42 U.S.C. Sec. 6926. If a state elects to enact its own program meeting minimum federal standards and applies for and receives approval from the EPA, then the state program operates in lieu of the federal program. 42 U.S.C. Sec. 6926; see, Palumbo v. Waste Technologies Indus., 989 F.2d 156, 157-58 (4th Cir.1993).
 
 
 17
 Kentucky enacted its own hazardous waste disposal program, Ky.Rev.Stat.Ann. Secs. 224.01-010, et seq. (1991), and thereafter received authorization from the EPA to implement it on January 31, 1985. 50 Fed.Reg. 2550 (1985). Counsel to the Secretary indicated Kentucky is authorized to implement the RCRA standards through its own authorized program but has not as yet obtained authorization to enforce the stricter standards imposed by HSWA. HSWA amended RCRA in part by adding the November 8, 1989 deadline language the parties dispute here. See, 42 U.S.C. Sec. 6925(c) (1988).
 
 
 18
 There is no dispute that under RCRA and under Kentucky's authorized program, a hazardous waste disposal facility must submit and receive approval from the Commonwealth of Kentucky of its Part A and Part B permit application to become fully licensed to operate. If an existing facility fulfills the necessary prerequisites and files its Part A permit application, it is allowed to continue to operate under certain conditions as if it had a permit with "interim status" authorization. 42 U.S.C. Sec. 6925(e)(1), 401 Ky.Admin.Regs. 30:010-20.
 
 
 19
 III. The History of LWD's Licensing Process.
 
 
 20
 LWD purchased its facility in 1977 and has since that time been involved in the complicated process of obtaining all the necessary permits and approvals for it to operate. LWD submitted its Part A application on September 19, 1980 and a Part B application on May 10, 1983. However, during the course of the application approval process, problems arose with LWD's Part B application. The Cabinet issued at least six "Notice of Deficiencies" to LWD concerning its Part B application. Plaintiffs contend these "notices" resulted from LWD's willful failure to provide the Cabinet with sufficient information to allow for the processing of its Part B application. Regardless of the reason, it is clear that the relationship between the Cabinet and LWD deteriorated to the point where two separate legal actions were initiated in the Franklin County, Kentucky, Circuit Court.
 
 
 21
 In the first action, Franklin County Circuit Court No. 89-CI-1138, the Cabinet sued LWD to enjoin it from transferring part of the property on which the facility is located to other corporate entities in an alleged attempt to avoid clean-up costs associated with part of the site. In the other action, Franklin County Circuit Court No. 89-CI-1592, LWD filed suit to enjoin the Cabinet from enforcing its decision to deny LWD's final Part B permit and effectively close the facility.
 
 
 22
 During the course of these proceedings, the circuit court determined that LWD had submitted a technically complete Part B application and obtained "interim status" to operate the facility since 1980 as defined by 401 KAR 30:010, Section 1(145)(b); 401 KAR 38:020, Section 1(1); and 401 KAR 30:010, Section 1(101). The court also enjoined the Cabinet from closing the facility but did not restrict the Secretary or Cabinet from taking further action against LWD pursuant to KRS Sec. 224.071, concerning LWD's Part B permit application. In fact, the court specifically remanded all issues relating to LWD's permit issuance or denial to the Cabinet for determination in accordance with the procedures of that administrative body.
 
 
 23
 The court's final order was in apparent response to an agreement by the Cabinet and LWD. This agreement established the conditions under which LWD would operate the incinerators pending the Cabinet's final permit decision, including "test" or "trial burns" of incinerators, and imposed $100,000 in civil penalties against LWD for past violations.
 
 
 24
 Concurrent with the Franklin County Circuit Court proceedings, plaintiffs filed three administrative petitions with the Cabinet protesting the agreements reached between LWD and the Cabinet as to the facility's continued operation during the approval process.[1] CHC's petitions were filed pursuant to KRS Sec. 224.10-420 which provides that any aggrieved person may file a petition and is entitled to a hearing concerning the issuance of a permit. Judicial review of all orders of the Cabinet is available in the Franklin County Circuit Court pursuant to KRS Sec. 224.10-470 and any decision reached by that court may be appealed to the Kentucky Court of Appeals. KRS Sec. 224.10-470.
 
 
 25
 In at least two of the petitions, CHC specifically alleged that LWD was in violation of 42 U.S.C. Sec. 6925(c)(2)(A)(ii) because LWD continued to operate under interim status although it had not been granted or denied its final Part B permit by the November 8, 1989 deadline. An administrative hearing was conducted on the petitions. The initial hearing officer recommended that CHC be granted partial summary judgment on the permit deadline issue based on his determination that LWD was in violation of RCRA because the final permit had not been issued by November 8, 1989. Both the Cabinet and LWD filed exceptions to the hearing officer's recommendation with the Secretary, and CHC responded to those exceptions. The Secretary declined to adopt the findings and recommendation.
 
 
 26
 The Secretary's decision was based in part on his determination that the report and recommendation by the hearing officer was grossly deficient in setting forth any legal reasoning, that factual disputes remained concerning the delays surrounding LWD's Part B permit issuance, and that the Franklin County Circuit Court had determined that LWD was entitled to interim status. The Secretary also noted that CHC failed to cite any case supporting its position that LWD's interim status expired by operation of law under RCRA on November 15, 1989.[2] More importantly, the Secretary determined that the November 8, 1989 deadline dispute was an appropriate issue for determination in subsequent administrative proceedings.
 
 
 27
 The Secretary then remanded the case for further administrative hearings and for the purpose of establishing a factual record in an effort to resolve the issues raised in CHC's petitions. In the remand order, the Secretary set forth a strict time table for the completion of discovery between the parties, the completion of any additional test burns and for review of the results. The Secretary also established a November 1, 1993 completion date for determining whether LWD would be issued or denied its Part B permit.[3] At this point, however, CHC abandoned its proceedings before the Cabinet and filed this action in the district court. CHC also filed a notice of its federal action with the Cabinet and sought a stay of any further Kentucky administrative proceedings pending resolution of its federal action.
 
 
 28
 IV. Analysis of Plaintiffs' Claims.
 
 
 29
 Plaintiffs filed this action pursuant to the citizens suit provisions of RCRA and CERCLA. The district courts have jurisdiction over such claims pursuant to 42 U.S.C. Secs. 6972 and 9659 (1988). In their thirteen count complaint, plaintiffs alleged eleven RCRA violations and two CERCLA violations. Four counts were filed against the Secretary and nine were filed against LWD. All the RCRA claims except one were brought pursuant to 42 U.S.C. Sec. 6972(a)(1)(A). That section provides in pertinent part that
 
 
 30
 [A]ny person may commence a civil action on his own behalf--
 
 
 31
 (1)(A) against any person ... who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter.
 
 
 32
 42 U.S.C. Sec. 6972(a). These "(a)(1)(A)" claims, counts I, II, V-VIII, and X-XIII, center on LWD's continued operations past the November 8, 1989 deadline, the Secretary's failure to issue or deny LWD's Part B permit, the Secretary's failure to revoke LWD's interim status, and for allowing test burns to proceed. In each of these counts, plaintiffs also alleged violations of Kentucky's environmental regulations.
 
 
 33
 Plaintiffs' remaining RCRA claim, count III, arises under 42 U.S.C. Sec. 6972(a)(1)(B). That section provides in pertinent part that
 
 
 34
 [A]ny person may commence a civil action on his own behalf--
 
 
 35
 (1)(B) against any person ... who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment ...
 
 
 36
 42 U.S.C. Sec. 6972(a)(1)(B).
 
 
 37
 In their "(a)(1)(B)" claim, count III, plaintiffs alleged that as a result of the Cabinet's failure to require LWD to comply with the final Part B permit process the incinerators pose an imminent and substantial endangerment to the public and the environment. Plaintiffs further alleged that even if LWD were issued the final permit, "substantial endangerment" to the public and the environment would continue to exist. We do not see how these allegations can reasonably be interpreted to be anything other than a collateral attack on Kentucky's hazardous waste permitting process in an effort to enjoin the issuance to LWD of an operating permit.
 
 
 38
 Plaintiffs are clearly alleging that even if LWD met all the federal and state criteria for the safe operation of the facility and were subsequently issued a permit, the facility would continue to pose "substantial endangerment" to the public and the environment. As such, this claim is barred by 42 U.S.C. Sec. 6972(b)(2)(D) which provides that "[n]o action may be commenced under subsection (a)(1)(B) of this section by any person (other than a State or local government) with respect to the siting of a hazardous waste treatment, storage, or disposal facility, nor to restrain or enjoin the issuance of a permit for such facility." (emphasis added). Accordingly, we conclude this claim must be dismissed. See, e.g., Palumbo v. Waste Technologies Industries, 989 F.2d 156, 159-62 (4th Cir.1993).
 
 
 39
 Plaintiffs' CERCLA claims center on LWD's alleged failure to comply with the notice provisions of CERCLA concerning the handling and release of hazardous materials into the environment in alleged violation of 42 U.S.C. Secs. 9603 and 9611(g). These claims therefore arise under the citizens suit provision of CERCLA, 42 U.S.C. Sec. 9659(a)(1). That section provides in pertinent part that "any person may commence a civil action ... against any person ... who is alleged to be in violation of any standard, regulation, condition, requirement or order which has become effective pursuant to this chapter." 42 U.S.C. Sec. 9659(a)(1) (emphasis added).
 
 
 40
 This provision has been interpreted to require allegations of continuous or intermittent violations. Lutz v. Chromatex, Inc., 718 F.Supp. 413, 420-22 (M.D.Pa.1989), relying on, Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc., 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987)(interpreting identical language of the citizens suit provision of the Clean Water Act, 33 U.S.C. Sec. 1251 et seq., 33 U.S.C. Sec. 1365(a)). We find this interpretation persuasive. Our review of plaintiffs' alleged CERCLA violations fail to reveal assertions that LWD's failure to comply with CERCLA's notice provisions are of a continuous or intermittent nature. Accordingly, these claims should be dismissed without prejudice.
 
 
 41
 V. Abstention.
 
 
 42
 Turning to the abstention issue in this case, we recognize that " 'the courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends,' " and " '[t]hey cannot abdicate their authority or duty in any case in favor of another jurisdiction.' " New Orleans Pub. Serv. Inc. v. Council of New Orleans, 491 U.S. 350, 359, 109 S.Ct. 2506, 2513, 105 L.Ed.2d 298 (1989), quoting, Chicot County v. Sherwood, 148 U.S. 529, 534, 13 S.Ct. 695, 697, 37 L.Ed. 546 (1893) (citation omitted in original). However, we also recognize that "there are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is 'the normal thing to do.' " Id., 491 U.S., at 359, 109 S.Ct., at 2513, quoting, Younger v. Harris, 401 U.S. 37, 45, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971). Although abstention is permissible, it is the exception and not the rule. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).
 
 
 43
 The most recent Supreme Court decision to address the principles underlying the Burford abstention doctrine is New Orleans Public Service, Inc. v. Council of New Orleans, 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (" NOPSI "). Plaintiffs rely on NOPSI, as did the district court, as authority that Burford abstention is inappropriate in this case. We disagree.
 
 
 44
 In NOPSI, the Court was faced with a challenge by a producer and retailer of electricity, New Orleans Public Service, Inc., to a decision by the New Orleans City Council not to grant a requested rate increase to cover all costs associated with building what was called the Grand Gulf Nuclear Reactor. These costs had been allocated to NOPSI by the Federal Energy Regulatory Commission ("FERC"). Id., 491 U.S., at 352, 109 S.Ct., at 2510. The Supreme Court ruled earlier that for the purposes of setting intrastate retail rates a State may not differ from FERC's allocations of wholesale power by imposing its own judgment of what would be just and reasonable. Nantahala Power & Light Co. v. Thornburg, 476 U.S. 953, 106 S.Ct. 2349, 90 L.Ed.2d 943 (1986). The Court had also ruled that FERC's allocation of the cost of the Grand Gulf Nuclear Reactor among the operating companies that jointly agreed to finance the construction and operation of the reactor pre-empted Mississippi's inquiry into the prudence of a utility retailer's decision to participate in the joint venture. Mississippi Power & Light Co. v. Mississippi ex rel. Moore, 487 U.S. 354, 108 S.Ct. 2428, 101 L.Ed.2d 322 (1988). Although the state rate making authority deferred to FERC's implicit finding that NOPSI's decision to participate in the Grand Gulf venture was reasonable, it determined that the costs incurred should not be completely reimbursed because, it asserted, the utility's management was negligent in failing later to diversify its supply portfolio by selling a portion of its Grand Gulf power. NOPSI, 491 U.S., at 352, 109 S.Ct., at 2510.
 
 
 45
 The Supreme Court declined to address whether the State's decision to provide less than full reimbursement conflicted with its earlier decisions but instead determined that the issue was whether the District Court properly abstained from exercising jurisdiction in deference to the state review process. Id., 491 U.S., at 352, 109 S.Ct., at 2510. In addressing the Burford abstention doctrine, the Supreme Court stated,
 
 
 46
 [w]here timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'
 
 
 47
 NOPSI, 491 U.S., at 359, 109 S.Ct., at 2514, quoting, Colorado River Water Conservation Dist. v. United States, 424 U.S., at 814, 96 S.Ct., at 1245. The Court went on to find Burford abstention inappropriate in its case because the case did not involve a state-law claim, nor even an assertion that the federal claims were "in any way entangled in a skein of state-law that must be untangled before the federal case can proceed." NOPSI, 491 U.S., at 361, 109 S.Ct., at 2514-15 (citation omitted). The Court further indicated that
 
 
 48
 [w]hile Burford is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy. Colorado River Water Conservation Dist., 424 U.S., at 815-16, 96 S.Ct., at 1245. Here, NOPSI's primary claim is that the Council is prohibited by federal law from refusing to provide reimbursement for FERC-allocated wholesale costs. Unlike a claim that a state agency has misapplied its lawful authority or has failed to take into consideration or properly weigh relevant state-law factors, federal adjudication of this sort of pre-emption claim would not disrupt the State's attempt to ensure uniformity in the treatment of an 'essentially local problem.'
 
 
 49
 NOPSI, 491 U.S., at 362, 109 S.Ct., at 2515 (citation omitted)(emphasis added).
 
 
 50
 In the present case, it is clear to us that Kentucky has an overriding interest in the protection of its environment from the effects of unregulated hazardous waste as indicated by its enactment of a broad statutory scheme and review process governing the issuance and approval of permits for hazardous waste facilities. See, KRS 224.01 et seq.; Cf., Ada-Cascade Watch Co. v. Cascade Resource Recovery, 720 F.2d 897 (1983)(finding Michigan's adoption of a complex system of permit review and approval process consistent with its interest in developing a coherent state policy toward hazardous waste facilities). We also find, according to the circumstances of this case, that the exercise of federal review at this juncture would be disruptive of Kentucky's efforts to establish a coherent policy with respect to the licensing of hazardous waste facilities. Moreover, in light of Kentucky's authorized program which incorporates the RCRA provisions and based on a review of plaintiffs' remaining (a)(1)(A) claims, it appears to us that plaintiffs' claims do not and cannot arise in isolation from state law issues nor are they premised solely on alleged violations of federal law. Each of plaintiffs' remaining (a)(1)(A) claims seeks declaratory and injunctive relief for alleged violations of state and federal RCRA requirements.
 
 
 51
 Further, this case simply does not present the same situation as that in NOPSI. Here, Kentucky has enacted and is operating its own authorized program under RCRA and is attempting to establish a coherent policy under its law concerning the operation and licensing of hazardous waste disposal facilities. We do not see how plaintiffs' claims can be decided without interfering with Kentucky's policies governing the issuances of hazardous waste incineration permits. In addition, it appears that plaintiffs allegations are based on assertions that the Secretary has failed to apply or misapplied his lawful authority under Kentucky law and under RCRA concerning the issuance of LWD's Part B permit. All of these findings distinguish this case from NOPSI. Simply put, federal adjudication of plaintiffs' claims presented here would be disruptive of Kentucky's attempt to ensure uniformity in its hazardous waste policy. See, NOPSI, 491 U.S., at 362, 109 S.Ct., at 2515.
 
 
 52
 VI. Conclusion.
 
 
 53
 We therefore conclude the district court should have dismissed all of plaintiffs' claims except Count III without prejudice under the Burford abstention doctrine. As to Count III of the complaint, it is hereby dismissed for want of jurisdiction under Palumbo v. Waste Technologies Industries, 989 F.2d 156 (4th Cir.1993). The district court's decision is therefore REVERSED, and this case is hereby REMANDED. We find it unnecessary to address other issues and contentions raised by the parties on appeal.
 
 
 
 *
 The Honorable Odell Horton, United States District Judge for the Western District of Tennessee, sitting by designation
 
 
 [1]
 CHC also sought leave to intervene in the Franklin County Circuit Court proceedings in December of 1991 but the motion was denied as movants failed to appear by counsel or in person
 
 
 [2]
 We also note the absence of any judicial decisions supporting plaintiffs' interpretation of 42 U.S.C. Sec. 6925. It appears the Secretary's order misstated the date of November 15, 1989 instead of November 8, 1989 date indicated by 42 U.S.C. Sec. 6925(c)(2)(A)(ii)
 
 
 [3]
 Counsel for the Secretary indicated at oral argument that the November 1, 1993 deadline for issuance or denial of LWD's final Part B permit had not been met due to the EPA's imposition of additional "Site Specific Risk Assessments" for each hazardous waste disposal facility before licensing could be completed