**WHITE & BREWER TRUCKING, INC.,**
**an Illinois corporation, Plaintiff,**

**v.**

**Leroy DONLEY, Environmental Site Developers, Inc., a Delaware corporation, Envirocon of Illinois, an Illinois corporation, and Mary Jane Donley, Defendants.**

**No. 95–3224.**

United States District Court,
C.D. Illinois, Springfield Division.

Feb. 6, 1997.

Christine Zeman, Nancy LaDonna Driver, Springfield, IL, for plaintiff.

Fred C. Prillaman, Stephen F. Hedinger, James R. Potter, Springfield, IL, for defendants.

### OPINION

RICHARD MILLS, District Judge:

Defendants petition for abstention and cite *Burford*.

Plaintiff petitions for retention of jurisdiction and cites the Resource Conservation and Recovery Act.

Bottom line: We decline to invoke *Burford* abstention and retain both the federal and pendent state law claims.

## I. FACTS ALLEGED IN THE COMPLAINT

### A. Counts I—III

Environmental Site Developers, Inc., ("ESDI") is a Delaware corporation which does business in Illinois. From 1977 to 1990, its president was Leroy Donley. On or about December 13, 1977, the Illinois Environmental Protection Agency ("IEPA") issued a permit to ESDI to develop a solid waste disposal site in Montgomery County, Illinois. By 1981, ESDI had received permits from the IEPA to operate four separate "cells" on the disposal site known as Cells A, B, C, and D. In 1986, ESDI received a permit to operate a fifth cell on the disposal site known as Cell E. During this time, the disposal site was authorized to operate as a pollution control facility and accepted fly ash generated by the Central Illinois Public Service Company's ("CIPS") power plant in Coffeen, Illinois.

By 1985, Cells A, B, C, and part of Cell D were closed.[1] On November 22, 1988, and on December 22, 1988, the IEPA sent ESDI a letter which stated that during its October 21, 1988 inspection of ESDI's disposal site, certain violations were observed. Specifically, the inspection revealed that leachate[2] was flowing from Cell D, onto the surface of the disposal site, and into Shoal Creek. On August 3, 1990, ESDI applied for the closure of the remaining operating portion of Cell D.[3] Accordingly, the disposal of coal combustion waste in Cells A–D occurred only during ESDI's ownership of the disposal site.

On August 1, 1990, ESDI and White & Brewer Trucking entered into a purchase agreement for the sale of the disposal site. Thus, on August 23, 1990, ESDI transferred its ownership rights in the disposal site to White & Brewer Trucking. On February 8, 1991, the IEPA issued permits to White & Brewer Trucking to operate Cells A–E as

disposal sites for coal combustion waste. However, the permit separated Cell E from Cells A–D, forming two independent facilities. Since the purchase of the disposal site, White & Brewer Trucking has deposited coal combustion waste in Cell E only.

On October 28, 1992, the Montgomery County Health Department inspector observed a leachate flow emanating from the disposal site. At a follow-up inspection on December 23, 1992, the inspector informed White & Brewer Trucking that the leachate was emanating from Cell D and was eventually emptying into the east branch of Shoal Creek. Since this initial inspection, the Montgomery County Health Department inspector has conducted several repeat inspections and has noted numerous violations with respect to Cells A–D. Each of the noted violations are alleged to have violated some provision of either Illinois' statutory or regulatory law.

On January 27, 1986, the IEPA issued a National Pollution Discharge Elimination System ("NPDES") permit to ESDI pursuant to the Federal Water Pollution Control Act. 33 U.S.C. § 1251. This permit prescribed testing requirements for the discharge of water from an outfall or point source at the disposal site. This point source discharges into a tributary of Shoal Creek. The permit established limitations on the level of contaminants discharged based upon Illinois' water quality standards. According to White & Brewer Trucking, ESDI violated its NPDES permit during its ownership and operation of the disposal site.

On September 10, 1991, the NPDES permit was transferred to White & Brewer Trucking. Pursuant to said permit, White & Brewer Trucking is required to conduct a sampling and analysis of groundwater from various points on the disposal site and in Shoal Creek. Throughout White & Brewer

---

1. Cell A closed in 1980; Cell B closed in 1981; Cell C closed in 1982; and a portion of Cell D closed at some point prior to 1985.

2. Leachate is "a liquid that has passed through or emerged from solid waste and contains soluble, suspended, or miscible materials removed from such waste." 40 C.F.R. § 258.2.

3. Closure refers to the ceasing of disposal activity as well as placing a final cover over the cell to minimize and/or eliminate the future release of contaminates. 35 Ill.Adm.Code § 807.501.

Trucking's ownership of the disposal site,[4] the groundwater on the disposal site has consistently exceeded Illinois' water and groundwater quality standards for sulfate, boron, manganese, and total dissolved solids. Accordingly, White & Brewer Trucking has brought this suit against ESDI and Leroy Donley based upon 42 U.S.C. § 6972 and for breach of contract.[5]

### B. Counts IV—VI

Prior to White & Brewer Trucking's purchase of the disposal site, CIPS retained Envirocon of Illinois to prepare an environmental assessment of the disposal site for White & Brewer Trucking. Mary Jane Donley was the president of Envirocon until the corporation was dissolved on December 1, 1992. Mary Jane Donley is also the wife of Leroy Donley. White & Brewer Trucking asserts that it relied upon the report prepared by Envirocon when it purchased the disposal site from ESDI. White & Brewer Trucking also alleges that the Envirocon report misrepresented the problems with Cells A–D in that the report stated that the site had not experienced any significant environmental event which was detrimental to the waters of the State of Illinois or to the macro-eco system of the region. The report further stated that there had not been a significant environmental problem associated with the facility since its inception. Accordingly, White & Brewer Trucking has brought this suit against Envirocon and Mary Jane Donley based upon negligent misrepresentation, fraudulent misrepresentation, and the Illinois Consumer Fraud and Deceptive Business Practices Act.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) allows for the filing of a motion for judgment on the pleadings at any time after the pleadings are closed. Rule 12(c) may be used in two ways. First, Rule 12(c) may be used "after the close of the pleadings to raise various rule 12(b) defenses regarding procedural defects, in which case courts apply the same standard applicable to the corresponding 12(b) motion." *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir.1993); *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir.1989). Thus, all well-pleaded allegations of the complaint are accepted as true, and all reasonable inferences are drawn in favor of the non-moving party. *Travel All Over The World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir.1996). "Dismissal is proper only where it appears beyond a doubt that the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief." *Id.* at 1429–30.

Second, Rule 12(c) may be used to dispose of the case based upon the underlying substantive merits. *Alexander*, 994 F.2d at 336. For this second use, "the appropriate standard is that applicable to summary judgment, except that the court may consider only the contents of the pleadings."[6] *Id.* All of the non-moving party's well-pleaded allegations are taken as true, and all facts and inferences are viewed in the light most favorable to the non-moving party. *Id.; Republic Steel Corp. v. Pennsylvania Eng'g Corp.*, 785 F.2d 174, 177 n. 2 (7th Cir.1986).

Therefore, judgment on the pleadings will not be granted unless "no genuine issues of material fact remain to be resolved and unless the [moving party] is entitled to judgment as a matter of law." *Alexander*, 994 F.2d at 336; *National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987). "For purposes of determining whether a material issue of fact exists, uncontested allegations to which a party had an opportunity to respond are taken as true." *Flora v. Home Fed. Sav. and Loan Ass'n*, 685 F.2d 209, 211 (7th Cir.1982).

---

**4.** White & Brewer Trucking alleges that the disposal site exceeded Illinois' water and groundwater quality standards as early as 1979.

**5.** White & Brewer Trucking alleges that ESDI and Leroy Donley contractually agreed to take full responsibility for the IEPA's approval of its new groundwater monitoring system.

**6.** However, the Court may consider documents which have been incorporated into the pleadings by reference and may take judicial notice of matters which are a matter of public record. *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir.1991); *Henson v. CSC Credit Serv.*, 29 F.3d 280, 284 (7th Cir.1994).

## III. ANALYSIS

Defendants argue that each of the six counts of Plaintiff's Complaint should be dismissed. Accordingly, the Court will address each of Defendants' arguments in turn.

### A. *Abstention*

Defendants argue that *Burford* abstention is applicable to the case at bar. *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Defendants claim that the Court should abstain from considering Counts I & II of the Complaint because the exercise of the Court's jurisdiction in this matter might interfere with Illinois' complex and exhaustive environmental statutory and regulatory scheme. Thus, Defendants assert that this matter would best be handled *via* the relief available to Plaintiff under Illinois' regulatory, administrative, and statutory law. Finally, Defendants assert that abstention is appropriate because Illinois has an interest in developing a coherent environmental policy which may be hindered if the Court does not abstain.

Plaintiff argues that neither Illinois' environmental regulatory scheme nor its permit process are at issue in the instant case. Thus, no complex issue of state law is involved, and the Court should not abstain based upon *Burford.* Plaintiff states that if the Court abstains, it will be left without meaningful relief because Counts I & II are brought pursuant to the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972, which is exclusively a federal claim. Accordingly, Plaintiff argues that the Court should not abstain from considering Counts I & II of the Complaint based upon *Burford.*

Abstention is a judicially created exception to the general grant of jurisdiction found in Article III of the U.S. Constitution. *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The doctrine of abstention allows a federal court to decline or to stay the exercise of its jurisdiction to give a state court the opportunity to decide an issue. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). However, abstention by a federal court should be the exception and not the rule. *Id.*

at 813, 96 S.Ct. at 1244; *Coalition for Health Concern v. LWD, Inc.,* 60 F.3d 1188, 1193 (6th Cir.1995). Abstention is justified only where the "order to the parties to repair to the state court would clearly serve an important countervailing interest." *Colorado River,* 424 U.S. at 813, 96 S.Ct. at 1244, quoting *Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959).

■ Generally, *Burford* abstention is appropriate where the state law is unclear on the issue at hand and where there is a need to defer to the state's complex administrative procedures. *Colorado River,* 424 U.S. at 814–15, 96 S.Ct. at 1244–45. As Justice Antonin Scalia stated:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar;" or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 2514–15, 105 L.Ed.2d 298 (1989), quoting *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1245.

The Seventh Circuit has stated that a district court should consider the following factors when determining whether or not to abstain pursuant to *Burford:*

> (1) whether the suit is based on a cause of action which is exclusively federal; (2) whether difficult or unusual state laws are at issue; (3) whether there is a need for coherent state doctrine in the area; and (4) whether stated procedures indicate a desire to create special state forums to adjudicate the issues presented.

*General Ry. Signal Co. v. Corcoran,* 921 F.2d 700, 708–09 (7th Cir.1991); *Time Warner Cable v. Doyle,* 66 F.3d 867, 874 n. 6 (7th

Cir.1995). However, the Seventh Circuit has yet to address the applicability of *Burford* abstention to a RCRA citizen suit. Other jurisdictions which have addressed the issue are divided.[7] Accordingly, based upon the relevant factors set forth by the Seventh Circuit in *General Ry. Signal,* the Court finds that *Burford* abstention is inappropriate in the instant case.

### 1. *Exclusively Federal*

■ Counts I & II of Plaintiff's Complaint are brought pursuant to the citizen suit provision of the Resource Conservation and Recovery Act. 42 U.S.C. § 6972. Therein, Congress established a civil cause of action against anyone who is, was, or has contributed "to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." *Id.* Congress also provided that said cause of action "*shall* be brought in the district court for the district in which the alleged violation occurred or the alleged endangerment may occur." *Id.* (emphasis added). Thus, federal district courts maintain exclusive, original jurisdiction over RCRA citizen suits.

It is because the RCRA citizen suit is exclusively a federal cause of action that the Court finds *Burford* abstention to be inappropriate in the case at bar. "The presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 26, 103 S.Ct. 927, 942, 74 L.Ed.2d 765 (1982). Moreover, a federal court should abstain based upon *Burford* only "[w]here timely and adequate state-court review is available...." *New Orleans Public Serv.,* 491 U.S. at 361, 109 S.Ct. at 2514.

In the instant case, there can be no timely and adequate state court review of Plaintiff's RCRA claim. Although the Fourth Circuit

did not fully consider the issue, that court stated that "[i]f [Plaintiffs'] claims are indeed subject to exclusive federal jurisdiction, then the presence of the NOPSI [*New Orleans Public Serv.*] circumstances discussed above would *not* warrant Burford abstention, because of the 'absence of available timely and adequate state-court review' for those federal claims." *Sugarloaf Citizens Ass'n v. Montgomery County, Maryland,* 1994 WL 447442, at *17 (4th Cir. Aug. 17, 1994) (emphasis added), quoting *New Orleans Public Serv.,* 491 U.S. at 361, 109 S.Ct. at 2514; *see also Middlesex City Bd. of Chosen Freeholders v. New Jersey,* 645 F.Supp. 715, 724 (D.N.J. 1986) (holding that federal courts have exclusive jurisdiction in a RCRA citizen suit and that such cases can be harmonized with state law where necessary to avoid abstention by a federal court). Accordingly, *General Ry. Signal*'s first factor weighs against abstention in the case at bar.

### 2. *Unusual or Difficult State Law*

· Defendants assert that Illinois has developed a complex and comprehensive regulatory and statutory scheme on environmental issues. *See* 415 ILCS 5/1 *et seq.; see also* 35 Ill.Adm.Code pt. 800 *et seq.* Therefore, Defendants argue that the Court should abstain, and Plaintiff should seek relief under said scheme. In support of their argument, Defendants cite both Fourth and Sixth Circuits cases which have held *Burford* abstention to be appropriate in RCRA citizen suits. *See Browning–Ferris, Inc. v. Baltimore County, Maryland,* 774 F.2d 77 (4th Cir.1985); *Palumbo v. Waste Technologies Indus.,* 989 F.2d 156 (4th Cir.1993); *Ada–Cascade Watch Co., Inc. v. Cascade Resource Recovery, Inc.,* 720 F.2d 897 (6th Cir.1983); *Coalition for Health Concern v. LWD, Inc.* 60 F.3d 1188 (6th Cir.1995).

**7.** *See Coalition for Health Concern v. LWD, Inc.,* 60 F.3d 1188 (6th Cir.1995) (abstention appropriate); *Space Age Fuels, Inc. v. Standard Oil Co. of California,* 1996 WL 160741 (D.Or. Feb. 19, 1996) (abstention appropriate); *Friends of Santa Fe County v. LAC Minerals, Inc.,* 892 F.Supp. 1333 (D.N.M.1995) (abstention appropriate); *Craig Lyle Ltd. Partnership v. Land O'Lakes, Inc.,*

877 F.Supp. 476 (D.Minn.1995) (abstention inappropriate); *Prisco v. New York,* 1992 WL 88165 (S.D.N.Y. April 22, 1992) (abstention inappropriate); *Middlesex County Bd. Of Chosen Freeholders v. New Jersey,* 645 F.Supp. 715 (D.N.J.1986) (abstention inappropriate); and *Davies v. Nat'l Coop. Refinery Ass'n,* 1996 WL 529208 (D.Kan. July 12, 1996) (abstention inappropriate).

■ However, Illinois' environmental policies and scheme are not at issue in the instant case. "While *Burford* is concerned with protecting complex state administrative processes from undue federal influence, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential conflict' with state regulatory law or policy." *New Orleans Public Serv.*, 491 U.S. at 362, 109 S.Ct. at 2515, quoting *Colorado River*, 424 U.S. at 815–16, 96 S.Ct. at 1245–46. In each of the cases cited by Defendants, abstention was proper because had the court not abstained, it would have been required to review the state's environmental permit process.[8]

■ On the other hand, the case at bar raises no issues as to Illinois' policies and regulations regarding the issuance or the renewing of landfill permits. There is no dispute that Plaintiff owns and operates the disposal site under validly issued permits. There also seems to be little question that those permits were violated. The only issue raised is who should be responsible for bringing the disposal site into compliance with said permits.[9] The Court cannot say that the issue of who is responsible would require it to delve into the intricacies of Illinois' environmental law. Accordingly, *General Ry. Signal*'s second factor weighs against abstention in the case at bar.

### 3. *Coherent State Doctrine*

■ Neither can the Court say that any rulings which it makes in the instant case will adversely affect Illinois' attempts at forming a coherent environmental policy. Again, simply because there is a potential for conflict between a federal court and a state administrative process does not mean *Burford* abstention should be invoked. *New Orleans Public Serv.*, 491 U.S. at 362, 109 S.Ct. at 2515. In any event, the Court is unsure that there will be a conflict between it and the Illinois administrative process. Illinois' concerns with environmental violations are, presumably: (1) that they never occur or (2) if they do occur, that they are resolved. The Court fails to see how the resolution of the issues before it would jeopardize those concerns or the State's environmental policy. Accordingly, *General Ry. Signal*'s third factor weighs against abstention in the case at bar.

### 4. *Special State Forums*

■ The only factor established in *General Ry. Signal* which weighs in favor of invoking *Burford* abstention in the instant case is "whether stated procedures indicate a desire to create special state forums to adjudicate the issues presented." *General Ry. Signal*, 921 F.2d at 709. The Illinois General Assembly has established the Illinois Pollution Control Board as the appropriate forum to adjudicate permit violations. *See* 415 ILCS 5/3.04 (1995); *see also* 415 ILCS 5/5 (1995). Presently, Plaintiff is a party to a suit which is pending before the Illinois Pollution Control Board. That suit raises issues which are similar to those raised in the instant case.

While Plaintiff could have joined Defendants as parties to the suit pending before the Illinois Pollution Control Board (case number 97–11; *see* 35 Ill.Adm.Code pt. 103.121 & 103.141), it does not *ipso facto* mean that Plaintiff must only seek relief from the Pollution Control Board.[10] This is

---

8. *See Browning–Ferris*, 774 F.2d at 79 (issue is whether court correctly invoked *Burford* abstention "in light of the pending state administrative proceedings that had been initiated by the State in order to deny [Plaintiff] a permit for the Norris Farm Landfill."); *Palumbo*, 989 F.2d at 159 (Plaintiffs' challenges to Ohio EPA's permitting decisions are denied on *Burford* abstention grounds); *Ada–Cascade Watch*, 720 F.2d at 905–06 (*Burford* abstention appropriate where Plaintiff asks the court to find two Michigan laws on obtaining landfill permits to be inconsistent and therefore, illegal); *Coalition for Health Concern*, 60 F.3d at 1195 (Plaintiff's claims cannot be decided without interfering with Kentucky's policies on the issuances of hazardous waste incineration permits).

9. The Complaint also raises the state law issues of breach of contract, misrepresentation, and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. However, none of these claims form a valid basis for the Court to invoke *Burford* abstention.

10. Contrary to Defendants' assertions, the U.S. Supreme Court has given no indications that *Burford* abstention should be applied broadly in situations in which adequate state court review is available. *E.g. McNeese v. Bd. of Educ.*, 373 U.S.

**1314**

especially true because the Illinois Pollution Control Board cannot consider Plaintiff's cause of action pursuant to 42 U.S.C. § 6972. Because Plaintiff cannot receive timely and adequate state court review of its RCRA claim and because the Court's consideration of the other three factors set forth in *General Ry. Signal* "tip the scale" in favor of finding *Burford* abstention to be inappropriate, the Court so finds.

 The key question which a federal district court must ask itself when considering whether to abstain pursuant to *Burford* is "whether an erroneous federal court decision could impair the state's effort to implement its policy." *Ada–Cascade Watch,* 720 F.2d at 903; *Turf Paradise, Inc., v. Arizona Downs,* 670 F.2d 813, 820 (9th Cir.1982); *BT Inv. Managers, Inc. v. Lewis,* 559 F.2d 950, 955 (5th Cir.1977). Ultimately, what is at stake is the interest of the federal court in retaining jurisdiction, especially in matters involving federal rights, versus the state's interest in adjudicating issues best handled in a state forum and the state's interest in maintaining uniformity in the treatment of local problems. *Quackenbush v. Allstate Inc. Co.,* —— U.S. ——, ——–——, 116 S.Ct. 1712, 1726–27, 135 L.Ed.2d 1 (1996). In the instant case, the Court cannot say that the adjudication of the issues before it would "unduly intrude into the processes of state government or undermine the State's ability to maintain desired uniformity." *Id.* ——, 116 S.Ct. at 1726; *New Orleans Public Serv.,* 491 U.S. at 363, 109 S.Ct. at 2515.

Furthermore, at least one court has found the issue of "open dumping" to be a national rather than a local problem. The United States District Court for the District of Minnesota has stated that "Congress has found the problems of solid and hazardous waste to be national as opposed to only an 'essentially local problem.'" *Craig Lyle Ltd. Partnership v. Land O'Lakes, Inc.,* 877 F.Supp. 476, 484 (D.Minn.1995). Generally, federal courts have been hesitant to interfere with land use questions. *Caleb Stowe Assoc.*

*v. County of Albemarle,* 724 F.2d 1079, 1080 (4th Cir.1984). However, because federal regulations have been established, it is unlikely that Congress considered the issue of environmental safety to be one of merely local concern. Accordingly, the Court declines to invoke *Burford* abstention in the instant case.

### B. *Wholly Past Violations*

Defendants argue that Count I of Plaintiff's Complaint should be dismissed because the only claim stated therein is one for wholly past violations. Defendants assert that RCRA citizen suits pursuant to 42 U.S.C. § 6972(a)(1)(A) for wholly past violations are barred. Moreover, Defendants claim that the notice provisions of the RCRA which require a would-be plaintiff to provide notice to the alleged violator in order to allow the alleged violations to be remedied prior to bringing a suit show that 42 U.S.C. § 6972(a)(1)(A) is applicable to present violators only. Finally, Defendants state that the United States Environmental Protection Agency's ("USEPA") regulations (40 C.F.R. § 257.3–3(a)) outlaw only the *present* operation of a landfill which is causing discharge in violation of a NPDES permit.

Plaintiff argues that it has alleged a continuing violation of the NPDES permit by Defendants (Count I is written in the present tense), and therefore, Count I is not for wholly past violations. Plaintiff states that because Defendants were the only parties to operate Cells A–D of the disposal site and because it is the consequences of the dumping and not the dumping itself which violates 42 U.S.C. § 6972(a)(1)(A), Count I should not be dismissed.

In *Gwaltney of Smithfield Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), the U.S. Supreme Court held that § 505(a) of the Clean Water Act (33 U.S.C. § 1365(a)) does not authorize citizen suits for wholly past

668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963) (holding that black students could bring a federal

court suit challenging a segregated school system

violations.[11] Therein, the U.S. Supreme Court specifically mentioned 42 U.S.C. § 6972(a)(1)(B) as an example of a statute in which Congress specifically targeted wholly past violations. *Id.* at 57, 108 S.Ct. at 381. However, the Supreme Court went on to opine that in order for a citizen suit brought pursuant to § 505(a) of the Clean Water Act to have subject matter jurisdiction,[12] all that is necessary is that the citizen-plaintiff make a good-faith allegation of a present or continuing violation. *Gwaltney,* 484 U.S. at 65, 108 S.Ct. at 385.

■ In the present case, the Court takes note of the parties' arguments based upon the plain language of the statute, the statute's notice provision, and the authority present from other federal district courts. However, when taking all of Plaintiff's well-pleaded allegations as true and when viewing all of the facts and inferences in the light most favorable to Plaintiff, the Court cannot say that Count I should be dismissed. In order to establish a *prima facie* case, Plaintiff must demonstrate: "(1) the alleged endangerment stems from a solid or hazardous waste as defined by RCRA, (2) conditions which may present an imminent and substantial endangerment, and (3) the defendant has contributed to or is contributing to such handling, storage, treatment, transportation, or disposal." *Craig Lyle,* 877 F.Supp. at 480; *see United States v. Aceto Agr. Chemicals Corp.,* 872 F.2d 1373, 1382 n. 9 (8th Cir.1989).

■ In the instant case, Plaintiff has alleged all of the essential elements of a *prima facie* case in Count I of its Complaint. Even though in *Gwaltney* the U.S. Supreme Court found that actions based upon wholly past violation are barred, the Supreme Court remanded the case to the Fourth Circuit to further consider whether the plaintiffs had made a good-faith allegation of a continuous or intermittent violation. Here, Plaintiff has made a good-faith allegation of a continuous

violation. Accordingly, the Court declines to dismiss Count I for lack of subject matter jurisdiction at this time.

### C. *Breach of Contract*

Defendants argue that Count III of the Complaint should be dismissed as to Defendant Leroy Donley. Count III alleges a breach of contract by Defendants ESDI and Leroy Donley. However, Defendant Leroy Donley states that he did not sign any contract or purchase agreement with Plaintiff in his individual capacity but only as the president of ESDI. Defendant Leroy Donley asserts that he cannot be held personally liable under Illinois law in such a situation, and therefore, Count III should be dismissed as to him.

Plaintiff argues that Count III meets the notice requirements of Federal Rule of Civil Procedure 8(a)(1). Plaintiff states that Defendant Leroy Donley has adequate notice of the claim against him, and therefore, Count III should not be dismissed in whole or in part.

Plaintiff correctly states that Federal Rule of Civil Procedure 8(a) incorporates a liberal pleading standard. However, Plaintiff must still allege "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed.R.Civ.Pro. 8(a)(2). Plaintiff has not shown that it is entitled to relief based upon a claim of breach of contract as to Defendant Leroy Donley. Accordingly, Count III is dismissed as to Defendant Leroy Donley.

In *Wottowa Ins. Agency v. Bock,* 104 Ill.2d 311, 472 N.E.2d 411, 84 Ill.Dec. 451 (Ill. 1984), the Illinois Supreme Court stated that "[w]hen an officer signs a document and indicates next to his signature his corporate affiliation, then absent evidence of contrary intent in the document, the officer is not personally bound." *Id.* at 313, 472 N.E.2d at 413, 84 Ill.Dec. at 453, citing *Knightsbridge Realty Partners, Ltd.–75 v. Pace,* 101 Ill.

without first invoking the state's administrative procedures).

11. Section 505 of the Clean Water Act is nearly identical to the RCRA's citizen suit provision in 42 U.S.C. § 6972(a)(1)(A).

12. 33 U.S.C. § 1365(a) is the equivalent of 42 U.S.C. § 6972(a)(1)(A).

App.3d 49, 427 N.E.2d 815, 56 Ill.Dec. 483 (Ill.App.Ct.1981). Plaintiff has alleged a breach of contract by Defendant Leroy Donley based upon the fact that Leroy Donley was the president of ESDI, that he signed the purchase agreement between ESDI and Plaintiff, and that he signed a handwritten commitment to be responsible to take all necessary steps to achieve IEPA approval of the new groundwater monitoring system at the disposal site.

■ However, Illinois law is clear that officers and directors are not subject to personal liability based solely upon their status as officers and/or directors. *See Stafford v. Puro,* 63 F.3d 1436, 1442 (7th Cir.1995); *see also HPI Health Care Serv. Inc. v. Mt. Vernon Hosp. Inc.,* 131 Ill.2d 145, 157, 545 N.E.2d 672, 677, 137 Ill.Dec. 19, 24 (Ill.1989). Furthermore, although Defendant Leroy Donley signed both the purchase agreement and the handwritten note attached to the Complaint as Plaintiff's Exhibit C, he did so in his official corporate capacity only. The purchase agreement is signed: "Environmental Site Developers, Inc., a Delaware Corporation, By Leroy Donley, Its President." The handwritten document is signed: "Leroy Donley, President of Environmental Site Developers, Inc." In both documents, Defendant Leroy Donley indicated his corporate affiliation next to his signature. Therefore, under Illinois law, he is not personally liable. *Bock,* 104 Ill.2d at 313, 472 N.E.2d at 413, 84 Ill.Dec. at 453.

Finally, there is no evidence within the documents themselves to indicate that the parties intended Defendant Leroy Donley to be personally bound, and Plaintiffs have not so alleged. The purchase agreement refers to the parties as Plaintiff and Defendant ESDI. The only mention of Leroy Donley is his signature as president of ESDI. Moreover, the handwritten document attached as Plaintiff's Exhibit C explicitly states that *"Environmental Site Developers, Inc.* will be responsible...." (emphasis added). Accordingly, even when taking all of the facts and inferences in a light most favorable to Plaintiff, Plaintiff can prove no set of facts in support of its claim of breach of contract against Defendant Leroy Donley which would entitle it to relief.

### D. *Misrepresentation*

### 1. *Count IV*

Defendants argue that Count IV of the Complaint, as a whole, does not allege all of the essential elements of a claim of negligent misrepresentation. Specifically, Defendants state that Plaintiff has failed to allege negligence. Thus, Count IV should be dismissed. In any event, Defendants state that Count IV should be dismissed as to Defendant Mary Jane Donley because Count IV fails to allege that Mary Jane Donley, individually, owed Plaintiff any duty.

■ Plaintiff argues that negligence is a conclusion of law, and therefore, had it alleged negligence specifically, Count IV would have been subject to a motion to strike. Furthermore, Plaintiff asserts that it has alleged all of the essential elements of a claim of fraudulent misrepresentation. Finally, Plaintiff claims that it has sufficiently alleged that Defendant Mary Jane Donley owed it a duty because the Count alleges that she participated in the operating decisions of Envirocon and participated in the preparation of the environmental report at issue.

In Illinois,

[t]o state a cause of action for negligent misrepresentation, plaintiff must plead and prove: (1) a false statement of material fact, (2) carelessness or negligence in ascertaining the truth of the statement by defendant, (3) an intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statement, (5) damage to the other party resulting from such reliance, and (6) a duty owed by defendant to plaintiff to communicate accurate information.

*Rosenstein v. Standard & Poor's Corp.,* 264 Ill.App.3d 818, 820, 636 N.E.2d 665, 667, 201 Ill.Dec. 233, 235 (Ill.App.Ct.1993); *see Board of Educ. v. A, C AND S, Inc.,* 131 Ill.2d 428, 452, 546 N.E.2d 580, 591, 137 Ill.Dec. 635, 646 (Ill.1989). Therefore, contrary to Plaintiff's assertion, it must allege "carelessness or negligence in ascertaining the truth of the statement by defendant" in its claim of negli-

gent misrepresentation. *Id.* Plaintiff has not alleged carelessness or negligence by Defendants nor has Plaintiff alleged any facts which would tend to establish carelessness or negligence on the part of Defendants.

Because Plaintiff has failed to allege all of the essential elements of a claim of negligent misrepresentation as to both Defendant Envirocon and Defendant Mary Jane Donley, the Court need not address Defendant Mary Jane Donley's argument that Count IV does not allege that she breached a duty owed to Plaintiff. Accordingly, Count IV is dismissed as to both Defendants Envirocon and Mary Jane Donley.

### 2. *Count V*

The challenge to Count V of the Complaint is made by Defendant Mary Jane Donley. Defendant Mary Jane Donley argues that Count V contains no allegations that she knew of the allegedly false statements contained within the environmental report at issue or that she intended that Plaintiff rely on the allegedly erroneous statements. Plaintiff states that a corporate officer may be held liable for the corporation's torts in which that officer actively participates. Furthermore, Plaintiff argues that in this case, fraud is a sufficient ground for piercing the corporate veil.

 As Defendant states, the essential elements which must be pled in order to establish a claim of fraudulent misrepresentation are: "(1) a false statement of material fact, (2) knowledge or belief of the falsity by the party making it, (3) intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, and (5) damage to the other party resulting from such negligence." *A, C AND S*, 131 Ill.2d at 452, 546 N.E.2d at 591, 137 Ill.Dec. at 646. Count V alleges all of the essential elements of a claim of fraudulent misrepresentation against Defendant Envirocon.

 However, Count V does not allege that Defendant Mary Jane Donley had any knowledge of the allegedly false statements contained within the environmental report, nor does it allege that she intended to induce Plaintiff to rely upon or to act upon those allegedly false statements. While Plaintiff alleges that Defendant Mary Jane Donley participated in the operation of Envirocon and in the preparation of the environmental report, those paragraphs do not sufficiently allege the second and third elements of a claim of fraudulent misrepresentation.

Furthermore, although fraud may be a sufficient basis to pierce the corporate veil, Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Count V neither alleges fraud nor the circumstances which constitute fraud. Accordingly, Count V is dismissed as to Defendant Mary Jane Donley.

### E. *Consumer Fraud and Deceptive Business Practices Act*

In Count VI of its Complaint, Plaintiff alleges that Defendants Envirocon and Mary Jane Donley violated the Illinois Fraud and Deceptive Practices Act ("Act"). 815 ILCS 505/1 *et seq.* (1995). Defendants claim that the Act does not apply in every commercial transaction; rather, in order to state a cause of action under the Act, Plaintiff must implicate some consumer protection concern. Defendants assert that Plaintiff has failed to allege any such concern. Moreover, Defendants state that Plaintiff's claim is essentially one based upon a breach of contract which is a purely private matter. Thus, the Act does not apply.

Plaintiff argues that the claim is not one sounding in contract but rather in tort. Furthermore, Plaintiff asserts that it is not required to plead a public injury or an effect on the public generally in order to state a cause of action under the Act. Finally, Plaintiff states that a single deceptive act is sufficient to support a recovery under the Act.

 The essential elements of a cause of action pursuant to the Act are: "(1) a deceptive act or practice including concealment or omission of any material fact; (2) defendants' intent that plaintiffs rely on the concealment; and (3) that the concealment occurred in the course of conduct involving trade or com-

merce." *Washington Courte Condominium Association–Four v. Washington–Golf Corp.*, 267 Ill.App.3d 790, 823, 643 N.E.2d 199, 221, 205 Ill.Dec. 248, 270 (Ill.App.Ct.1994). Moreover, Illinois courts have held that the Act should be liberally construed to curb fraudulent abuses and to provide a remedy to injured parties. *People ex rel. Hartigan v. Lann*, 225 Ill.App.3d 236, 240, 587 N.E.2d 521, 524, 167 Ill.Dec. 252, 255 (Ill.App.Ct. 1992).

Contrary to Defendants' assertions, Counts IV and V of Plaintiff's Complaint are not based upon a breach of contract but are based upon the tort claims of negligent and fraudulent misrepresentation. *See A, C and S*, 131 Ill.2d at 452–60, 546 N.E.2d at 591–595, 137 Ill.Dec. at 646–650. Because the cases cited by Defendants involve claims for a breach of contract, they are inapplicable to the case at bar.

█ Furthermore, public injury need not be pled in order to establish a *prima facie* case under the Act. 815 ILCS 505/10a; *see Reshal Assoc., Inc. v. Long Grove Trading Co.*, 754 F.Supp. 1226, 1236–37 (N.D.Ill.1990); *see also Royal Imperial Group, Inc. v. Joseph Blumberg & Assoc., In.*, 240 Ill.App.3d 360, 368, 608 N.E.2d 178, 183, 181 Ill.Dec. 105, 110 (Ill.App.Ct.1992). Prior to 1996, 815 ILCS 505/10(a) explicitly stated that "[p]roof of a public injury, a pattern, or an effect on consumers generally shall not be required." In 1996, the General Assembly amended the statute. Title 815 ILCS 505/1(a) now states that "proof of public injury, a pattern, or an effect on consumers and the public interest generally shall be required in order to state a cause of action under this Section against a party defendant who is a new vehicle dealer or used vehicle dealer...." *Id.* Plaintiff does not deal in either new or used vehicles. Thus, Plaintiff is not required to plead proof of a public injury.

*Ergo,* Defendants' Motion for Judgment on the Pleadings is ALLOWED in part and DENIED in part. Defendants' motion as to Count III is ALLOWED as to Defendant Leroy Donley. Accordingly, Defendant Leroy Donley is DISMISSED WITHOUT PREJUDICE from Count III of the Complaint.

Defendants' motion as to Count V is ALLOWED as to Defendant Mary Jane Donley. Accordingly, Defendant Mary Jane Donley is DISMISSED WITHOUT PREJUDICE from Count V of the Complaint.

Defendants' motion as to Count IV is ALLOWED as to Defendants Envirocon and Mary Jane Donley. Accordingly, Count IV is DISMISSED WITHOUT PREJUDICE.

Finally, Defendants' motion as to Counts I, II, and VI is DENIED.