In re **FORTY–EIGHT INSULATIONS, INC., Debtor.**

**Jackson C. SMITH, an Illinois citizen and resident, Plaintiff,**

v.

**Thomas J. ALLISON, Trustee, Forty–Eight Insulations Qualified Settlement Trust, a resident transacting business in Illinois, Defendant.**

Bankruptcy No. 85 B 05061.
Adversary No. 96 A 01091.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Sept. 23, 1997.

Leonard C. Jacques and Alan Kellman, of the Maritime Asbestos Legal Clinic, Detroit, MI, and local counsel, D.J. Sartorio and Eric Emerson, of Tressler, Soderstrom, Maloney & Priess, Chicago, IL, for Plaintiff.

Terry J. Malik, Brant C. Weidner, and Dirk W. Andringa of Winston & Strawn, Chicago, IL, for Defendant.

## *MEMORANDUM OPINION*

RONALD BARLIANT, Bankruptcy Judge.

The Maritime Asbestos Claimants ("Plaintiffs") filed a class action against the trustee of the Forty–Eight Insulations Qualified Settlement Trust ("Trustee") in the Circuit Court of Cook County. The Trust was created by the plan of reorganization confirmed in this chapter 11 case. The Plaintiffs brought the action for the sole purpose of establishing that the "Defendant [apparently meaning the Debtor, not the Trustee or the Trust] manufactured of [sic] asbestos-containing products

used in the maritime industry aboard vessels upon which class members served, worked and lived." Complaint at ¶ 5. The Trustee caused the action to be removed to this Court. The Trustee has moved for judgment on the pleadings. For the reasons set forth below, this Court concludes that the action is prohibited by the plan and that the class cannot be certified under Rule 23. The Trustee's motion for judgment on the pleadings will therefore be granted.[1]

## BACKGROUND

### Plan of Reorganization

In May, 1995, this Court confirmed Forty–Eight Insulations' Modified Fourth Amended Plan of Liquidation (the "Plan"). The Plan provided for payment of asbestos-related property damage and personal injury claims from the Forty–Eight Insulations' Qualified Settlement Trust (the "Trust").[2] The Plan and related agreements established the standards and procedures for allowance and payment of claims. Each claimant was required to prove exposure to asbestos products manufactured by the Debtor *and* the diagnosis of an asbestos related disease as a result of that exposure. Plan ¶ 6.4 If the claims administrator denied the claim, the claimant could resubmit the claim with additional data to substantiate its validity. If the claims administrator denied the claim a second time, the claimant's only option was to file suit against the Trust and establish that the claim had been improperly rejected. Plan ¶ 6.6. Of course, the only way a claimant could establish that his or her claim had been improperly rejected would be to prove 1) exposure to the Debtor's products; and 2) that such exposure caused the asbestos related disease.

This was the only suit permitted under the Plan. The Plan otherwise prohibited any claimant from taking any other action against any other entity involved in the settlement that led to the Plan. Plan Article VII. The Plan provided for the broadest possible inter-

---

1. The Trustee also moved, in the alternative, to strike improper allegations in the complaint and the jury demand. Because this Court is granting judgment on the pleadings, those issues are moot and need not be decided.

2. The Plan incorporated the terms of the Trust and the Claims Processing Agreement by reference.

pretation of the injunctive provision, as follows:

> The Injunction is an integral part of the Plan and the Settlement Agreements because it: (a) enjoins action that threatens the integrity of the Settlement Agreements; (b) facilitates the expeditious and effective performance of this Plan; (c) guards against collateral attack or interference with the consummation of the Plan and the proceeds of the Settlement Agreements; and (d) protects the rights, interests, and claims of the parties under the Settlement Agreements. As such, the provisions of the Injunction shall be construed as broadly as the law and the English language permit. [Plan ¶ 7.3; Confirmation Order ¶ 52].

The Plan therefore contemplated only one type of action that any disappointed claimant would be permitted to bring against any entity involved in the liquidation process: an action against the Trust to establish that the claim had been improperly rejected. No other actions were permitted, and, in fact, any other action was enjoined by the Plan and the Order of Confirmation.

### THE PLAINTIFFS' CLAIM

In their complaint the Plaintiffs state that the sole purpose of the action is to establish that the Debtor's products were used in the maritime industry. Complaint ¶ 5. They then conclude that such proof will entitle class members to have the Trustee review medical documents and, subject to such review, obtain payment from the Trust for their asbestotic injuries. Complaint ¶ 6. Plaintiffs also allege that the "action will not involve proofs required for individual seamen's rights to recover for compensatory damages because the process and procedure for ascertaining said damages were set forth in the Plan." ¶ 8.

---

**3.** The pleadings incorporated the Plan and Confirmation Order which in turn incorporated the Trust and Claims Processing Agreement. Notwithstanding the clear mandate of Rule 12(c), that it is to be limited to the pleadings, the Plaintiffs referred to extraneous "evidence" not

### JURISDICTION

Resolution of this matter requires an interpretation of the Plan and confirmation order. Bankruptcy courts have inherent authority to interpret their own confirmation orders. *In re Weber,* 25 F.3d 413, 416 (7th Cir.1994)(such construction is entitled to same deference accorded courts construing their own judgments). Although there is no longer an estate (all property having passed to the Trust), this matter does affect the "adjustment of the debtor-creditor ... relationship" made by the Plan. 28 U.S.C. § 157(b)(2)(0). Therefore, this Court has core jurisdiction.

### DISCUSSION

#### Standards under Fed.R.Civ.P 12(c)

A motion for judgment on the pleadings may be brought anytime after the pleadings are closed. Fed.R.Civ.P.12(c). There are two functions it may perform. It may raise Rule 12(b) defenses relating to procedural and pleading defects. When used in this manner, the standards applicable to a motion under Rule 12(b) apply. If, however, the motion is brought to dispose of the action based upon the "underlying substantive merits," the standards applicable to summary judgment apply. Either way, the court is only permitted to consider the pleadings, documents incorporated into the pleadings by reference, and matters of public record that may be judicially noticed. *Alexander v. City of Chicago,* 994 F.2d 333, 335–36 (7th Cir. 1993); *White & Brewer Trucking, Inc. v. Donley,* 952 F.Supp. 1306, 1310 (C.D.Ill. 1997).[3]

Because this motion will dispose of the action on the underlying substantive merits, this Court will apply standards applicable to a summary judgment motion. This requires the Court to accept all well-pleaded allegations in the Plaintiffs' complaint as true and to draw any inferences in a light most favorable to the non-movant. The motion for

---

properly before this Court. In fact every document included in the plaintiffs' "Exhibits in Support" is outside the pleadings. This Court will disregard those exhibits and all references to them contained in the Plaintiffs' brief.

judgment on the pleadings can only be granted if there are no genuine issues of material fact and the Trustee is entitled to judgment as a matter of law. *Alexander*, 994 F.2d at 336.

The issues before this Court are purely legal ones. There are no disputed issues of fact. This Court may, therefore, properly enter judgment on the pleadings.

### Plan Interpretation

Plaintiffs state in ¶ 5 of the complaint that it is brought for the limited purpose of establishing that the Debtor's products were used in the maritime industry. Plaintiffs then draw a legal conclusion that if they establish the Debtor's products were used aboard marine vessels class members will be "entitle[d] ... to have the Trustee review medical documents already on file with the Trust and subject to such review be compensated for their asbestotic afflictions under the Trust's claims processing procedures." ¶ 6 of Complaint. This conclusion is untenable under the terms of the confirmed Plan.

The purpose of the Plan and Trust was to establish an efficient procedure for processing and paying a multitude of personal injury claims from a limited pool of assets. All persons involved in the formulation of the Plan were keenly aware that excessive litigation would only deplete an already limited pool of assets. For that reason, narrow procedures were established for processing claims and only one type of lawsuit is permitted: a suit against the Trust following two rejections to establish that a claim had been improperly rejected or miscategorized. All other actions are prohibited. To buttress the limitation on litigation, an injunction was entered prohibiting any action against all other entities involved in the process, including the "Debtor, any Settling Insurers, Foster Wheeler or any property of any of the foregoing Persons, or any direct or indirect transferee of any property of, or direct or indirect successors in interest to, any of the foregoing Persons, or any property of any such transferee or successor." Plan Article VII.

The pending class action is not the type of suit permitted by the Plan; it seeks to establish only that the Debtor's products were used in the maritime industry. Even if successful, that will not establish improper rejection. Plaintiffs can only establish that their claims were improperly rejected by proving that *each* claimant was exposed to asbestos products manufactured by the Debtor and that the claimant has been diagnosed with an asbestos related disease that resulted from that exposure. Plan ¶ 6.4.

The Court of Appeals for the Seventh Circuit recognized the inherent deficiency in this action when ruling on the Plaintiffs' appeal of this Court's order allowing an interim distribution from the Trust. *In re Forty–Eight Insulations, Inc.*, 115 F.3d 1294 (7th Cir.1997)(appeal denied).

Paragraph five of the Claimants' complaint in the class action states that the action was brought "for the limited purpose ... of establishing [that] the Defendant manufactured asbestos-containing products which were used in the maritime industry aboard vessels upon which class members served, worked and lived." The Plan, however, requires more than a showing that Debtor supplied contaminated materials to the industry; it requires evidence of exposure to those materials from each individual claim holder. The class action complaint does not address exposure on an individual level. *Thus, even if the Claimants would "win" the class action, i.e., the court would find that Debtor supplied asbestos-containing products to the maritime industry, the Claimant class would still have to clear the hurdle of proving that each class member was exposed to the products and suffered medical consequences from that exposure.* [115 F.3d 1294, 1303 (emphasis added)].

Moreover, contrary to the legal conclusion drawn in the complaint (¶ 6), even if Plaintiffs establish that the Debtor's products were used in the maritime industry, they are not then entitled to a third review of their claims by the claims administrator. Rather, the Plan only permits two reviews by the plan administrator. After those reviews a claimant has only one avenue remaining: sue the Trust to establish improper rejection. If

the claimant is unsuccessful, its claim is forever barred and no further review or litigation is permitted.

Finally, because the Plan has been confirmed, the Plaintiffs cannot now attempt to change the established rules. § 1141 (confirmation binds any creditor whether or not such creditor's claim is impaired and whether or not such creditor accepted the plan). Any such collateral attack on the terms of the Plan would be barred. *In the Matter of Chicago, Milwaukee, St. Paul and Pacific Railroad Co.*, 891 F.2d 159, 162 (7th Cir. 1989); *In re Union League Club of Chicago*, 203 F.2d 381, 386 (7th Cir.1953).

Because the lawsuit is not the type permitted by the Plan, it is enjoined by Article VII of the Plan. Because under no circumstances will the relief requested in the Plaintiff's complaint entitle them to payment from the Trust, the Trustee's motion for judgment on the pleadings will be granted.

### Certification under Fed.R.Civ.P. 23 [4]

A class action may be maintained under Rule 23 when all of the requirements of Rule 23(a) have been met (numerosity; commonality; typicality; and adequacy of representation) and at least one of the requirements of Rule 23(b) is met (effect of prosecution of separate action—23(b)(1); relief for the class as a whole—23(b)(2); common questions of law or fact predominate ("predominance requirement")—23(b)(3)). At this juncture, the Trustee does not challenge the requirements of Rule 23(a). Rather the Trustee argues that the class cannot be maintained because the Plaintiffs cannot satisfy any of the requirements of Rule 23(b).[5]

### Rule 23(b)(3)

Relying on the recent Supreme Court decision in *Amchem Products, Inc. v. Windsor*, —— U.S. ——, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), the Trustee argues that as a matter of law, the predominance requirement of Rule 23(b)(3) cannot be met in an asbestos class action.[6] In *Amchem* the district court certified for settlement purposes a class of present and future claimants that had been exposed to asbestos products. The Third Circuit vacated and remanded for decertification. *Georgine v. Amchem Products, Inc.*, 83 F.3d 610 (3rd Cir.1996). The Supreme Court affirmed that decision. *Id.*

There were two distinct issues in *Amchem*. The first was whether certification requirements had to be satisfied in settlement-only classes.[7] The second, relevant here, was whether those requirements had been satisfied. The court found that the predominance requirement of Rule 23(b)(3) was not satisfied and, quoting from the Third Circuit's decision, found it problematic in asbestos cases:

> Class members were exposed to different asbestos-containing products, for different amounts of time, in different ways, and over different periods. Some class members suffer no physical injury or have only asymptomatic pleural changes, while others suffer from lung cancer, disabling asbestosis, or from mesothelioma ... each has a different history of cigarette smoking, a factor that complicates the causation

---

4. The complaint was filed in the Circuit Court of Cook County, Illinois, and therefore, certification was requested under § 2–801 of the Illinois Code of Civil Procedure. 735 ILCS 5/2–801. However, because the action has been removed to federal court, the class action must satisfy the requirements of Fed.R.Civ.P. 23.

5. The availability of relief under Rule 23(b)(1) is not at issue.

6. Rule 23(b)(3) provides that a class action may be maintained if:
   "[T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The

matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

7. The court determined that "settlement is relevant to a class certification" but that the requirements of the Rule, other than issues related to trial management, "demand undiluted, even heightened, attention in the settlement context." *Id.*, —— U.S. at ——, 117 S.Ct. at 2248.

inquiry. [*Amchem*, —— U.S. at ——, 117 S.Ct. at 2250].

Plaintiffs argue that this is not the type of "sprawling" class involved in *Amchem*. Yet Plaintiffs define the class as "present and veteran members of the United States Merchant Marine who comprised crew members of ships from pre-World War II onward" (Complaint ¶ 11) which "by the end of World War II numbered in excess of 500,000" (Complaint ¶ 12). Because of the shear magnitude of such a class, with each member suffering from different levels of exposure for different periods of time, it defies logic to say that "common issues predominate."[8]

Plaintiffs contend that they will not have to prove exposure on a claimant by claimant basis because the presence of the Debtor's products will be established on a fleet by fleet basis. Even if the Plan did not preclude this course of action and even if Plaintiffs could prove exposure on a fleet by fleet basis that would still not avoid the individual issues inherent in asbestos litigation. The Plaintiffs would still have to prove how long each seaman worked aboard the ships and that each individual developed an asbestotic disease as a result of that exposure. Thus, even with proof of fleet exposure, there will still be thousands of claimants with different levels of exposure and different injuries resulting from such exposure. Those issues are not common as to all members of the class and a class could not be certified.

Plaintiffs rely on a number of cases where "mass trials" either through a class action or consolidation have been permitted. There are several problems with Plaintiffs' reliance on those decisions. First the cases involving consolidation as opposed to class actions are inapposite. Consolidation is decided under Fed.R.Civ. P. 42, an entirely different standard than that for class actions under Rule 23. Second, several class actions were certified for a narrow purpose. *In Jenkins v. Raymark Indus.*, 782 F.2d 468 (5th Cir.1986) the class was certified to address the "state of the art" defense asserted by several defendants.[9] Finally, the viability of all of those cases is brought into question following the Supreme Court's holding in *Amchem*.

### Rule 23(b)(2)

Alternately, Plaintiffs argue that declaratory relief is available under Rule 23(b)(2). A class action may be maintained under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Because Plaintiffs have requested declaratory relief, i.e., that Debtor's products were used in the maritime industry, they conclude that they have satisfied the declaratory relief requirement of Rule 23(b)(2). They fail, however, to consider the definition of "final injunctive relief or corresponding declaratory relief" as used in that subsection. Merely requesting some form of declaratory relief will not satisfy the Rule.

The Advisory Committee explained that "[d]eclaratory relief 'corresponds' to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief. The subdivision does not extend to cases in which the appropriate

---

**8.** The proposed class in this case does not include victims who have not yet developed asbestos related diseases, a problem faced by the courts in *Amchem*. Even so, there remains the same individual issues of exposure and proximate cause that must be established by each class member that prevent this class from satisfying the Rule 23(b)(3) predominance requirement.

**9.** It is true that in some ways this case is similar to *Jenkins*; both are limited to a single issue. The difference is that in *Jenkins* the single issue of the viability of a state of the art defense was consuming "substantial resources in every asbestos trial." Here the Plan and Trust have defined the issues in an attempt to conserve resources and the issue Plaintiffs would like to have certi-

fied is not one of the issues defined by the Plan. Unlike *Jenkins*, the class serves no purpose.

Moreover, the court in *Jenkins* acknowledged that "[c]ourts have usually avoided class action in the mass accident or tort setting. Because of differences between individual plaintiffs on issues of liability and defenses of liability, as well as damages, it has been feared that separate trials would overshadow the common disposition for the class." However, because Congress failed to deal with the problem of mass torts, the courts were forced to find some way to avoid repetitive hearings. *Jenkins*, 782 F.2d at 473. The limited issue class action in *Jenkins* was one such attempt.

final relief relates exclusively or predominantly to money damages." Nor does an action requesting a declaration that the defendant's conduct "constitutes a breach of conduct ... qualify under Rule 23(b)(2) because the effect is simply to lay the basis for a damage award rather than injunctive relief." *7A Wright and Miller, Federal Practice & Procedure, § 1775 at 462–63 (1986).* Accord *Sarafin v. Sears, Roebuck and Co., Inc.*, 446 F.Supp. 611, 615 (N.D.Ill.1978)("declaratory judgment should perform the same function as an injunction ... It should not lay the basis for a later damage award.")

The present action cannot be certified under Rule 23(b)(2) because the declaratory relief will not afford final relief. Rather, this action merely forms the basis for Plaintiffs' later claim against the Trust for monetary damages.[10]

Because the class action cannot be maintained under Rule 23(b), the Trustee's request for judgment on the pleadings is granted.

### CONCLUSION

The class action filed by members of the maritime industry is not the type of lawsuit permitted by the terms of the confirmed plan or reorganization. It is therefore barred by the broad injunctive provisions of the Plan and order of confirmation. Moreover, even if the suit were permitted under the Plan, the requirements of Fed.R.Civ.P. 23(b) cannot be satisfied. For those reasons, the action cannot stand and the Trustee is entitled to judgment on the pleadings.

---

**10.** As part of its argument against certification under Rule 23(b)(2) the Trustee argues that the primary relief sought is monetary, not injunctive. The Trustee is correct that the injunctive or declaratory relief must be the primary relief sought and not merely incidental to the request for monetary damages. *Celestine v. Citgo Petroleum Corp.*, 165 F.R.D. 463 (W.D.La.1995).

The complaint itself only requests a declaratory judgment. So on a superficial level the complaint is one for only a declaratory judgment. However, Plaintiffs claim an ability to then require the Trustee to reconsider their claims and obtain payment from the Trust. The problem, as we have discussed elsewhere, is that Plaintiffs' strategy is impermissible under the terms of the Plan; assuming the allegations of their complaint are true and the Debtor's products were used in the maritime industry, the Trustee has no obligation to reconsider or pay their claims. Under these unique circumstances, this Court cannot consider Plaintiff's action in a vacuum, but instead must look at the overall relief they are seeking—payment of their claims from the Trust. That is primarily an action for monetary damages and is not maintainable under Rule 23(b)(2).